*215 OPINION OF THE COURT
Chief Judge Cooke.
The cause of action for indemnification interposed against the manufacturer of an allegedly defective product is independent of the underlying wrong and for the purpose of the Statute of Limitations accrues when the loss is suffered by the party seeking indemnity. Hence, the dismissal of that part of the third-party complaint seeking indemnity, as barred by the four-year Statute of Limitations for breach of warranty measured from the date of tender of delivery (Uniform Commercial Code, § 2-725), was unwarranted.
Plaintiff Joseph McDermott, an employee in the New York City Sanitation Department, commenced this action against the city in 1969 after his arm was severed by the hopper mechanism of a sanitation truck. The city, in turn, brought a third-party action in June, 1975 against respondent Heil Company, the manufacturer of the body and hopper of the truck. The city alleged that any injury to the plaintiff was caused solely by Heil’s breach of duty, and demanded full indemnification. Specifically, the city claimed that the product was not fit for its intended use and was dangerous to those who used it. In addition, the third-party complaint asserted a claim for negligence.
The trial evidence indicated that sanitation truck bearing . serial number 252-386 was delivered to the city on February 5, 1969. On the evening of February 24, 1969, plaintiff and two fellow sanitation workers, Richard Mancuso and Joseph Cantelli, were assigned to that truck. When the accident occurred, Mancuso was driving, while McDermott and Cantelli were collecting refuse and loading it into the rear of the truck. Plaintiff testified that he was dumping the contents of a refuse can into the truck when the hopper activated. His arm got caught, he was raised up in the air, screaming, and his limb was severed. It is undisputed that the hopper mechanism was designed to activate only when a button at the rear of the truck was pressed. Both plaintiff and Caiitelli related, however, that they did not activate the hopper, and it was impossible for Mancuso to have done so from the cab of the vehicle. Another city employee swore that, after the incident, he checked the hopper and it seemed to be functioning properly.
After all parties had rested, the trial court dismissed the third-party complaint on the ground that it was a products liability action barred by the Uniform Commercial Code four- *216 year Statute of Limitations for breach of warranty claims, calculated from the date of delivery of the sanitation truck.[1] Before plaintiff’s case was submitted to the jury, the city and the plaintiff arrived at a $150,000 settlement. On the city’s appeal from the dismissal of the third-party complaint, the Appellate Division affirmed, without opinion. The city now urges, according to the accepted rule, that the cause for indemnification did not accrue until payment was made to the injured plaintiff. For its part, the Heil Company argues for a differing accrual rule for indemnification claims relating to defective products.
There must be a reversal. Indemnification claims generally do not accrue for the purpose of the Statute of Limitations until the party seeking indemnification has made payment to the injured person. This principle stems from the nature of indemnification claims and does not vary according to the breach of duty for which indemnification is sought. Since the city’s third-party complaint was interposed before payment to plaintiff — before the city sustained damage — the indemnification cause of action was not time barred.
At the outset, it bears emphasis that no issue involving Dole v Dow Chem. Co. (30 NY2d 143) is implicated here. Dole dealt with apportionment of liability among joint tort-feasors, commonly referred to as contribution, and left undisturbed the established rules of indemnification (e.g., Riviello v Waldron, 47 NY2d 297, 306; Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34, 38-40; Rogers v Dorchester Assoc., 32 NY2d 553). This court has often pointed to the "fundamental distinction between contribution and indemnity. The right to contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution. * * * The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial, reimbursement is sought” (McFall v Compagnie Maritime Beige [Lloyd Royal], S. A., 304 NY 314, 327-328; accord, e.g., Riviello v Waldron, 47 NY2d 297, supra; Rock v Reed-Prentice Div. of Package Mach. Co., supra, at pp 38-39).
Conceptually, implied indemnification finds its roots in *217 the principles of equity. It is nothing short of simple fairness to recognize that "[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity” (Restatement, Restitution, § 76). To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs (see, e.g., Dunn v Uvalde Asphalt Paving Co., 175 NY 214, 217-218; Oceanic S. N. Co. v Compania Transatlantics Espanola, 134 NY 461, 465-468; City of Brooklyn v Brooklyn City R. R. Co., 47 NY 475, 486-487; Leflar, Contribution and Indemnity Between Tortfeasors, 81 U of Pa L Rev 130, 147; Meriam & Thornton, Indemnity Between Tortfeasors: An Evolving Doctrine in the New York Court of Appeals, 25 NYU L Rev 845). As was true with many unjust enrichment cases, the vehicle through which the law operated was the quasi contract (see, e.g., Roberts v Ely, 113 NY 128, 131).[2] Thus, the rule developed that "[w]here payment by one person is compelled, which another should have made * * * a contract to reimburse or indemnify is implied by law” (Brown v Rosenbaum, 287 NY 510, 518-519; Dunn v Uvalde Asphalt Paving Co., supra, at pp 217-218). This implied in law contract covers, "not mere liability”, but loss or damage (Dunn v Uvalde Asphalt Paving Co., supra, at p 218; Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, pp 217, 229).
Given the quasi contractual character of the indemnification action, it was obvious that the contract Statute of Limitations, now six years (CPLR 213, subd 2), would be held controlling (Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, at pp 229-230). And, since the cause of action is not complete until loss is suffered, familiar Statute of Limitations principles dictate that accrual occurs upon payment by the party seeking indemnity (see, e.g., Bay Ridge Air Rights v State of New York, 44 NY2d 49, 54; Musco v Conte, 22 AD2d 121, 125-126 [Hopkins, J.]; Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, at p 229; see, also, Ann., 57 ALR3d *218 867).[3] Because the indemnity claim is a separate substantive cause of action, independent of the underlying wrong, this accrual rule remains the same, whatever the underlying breach of duty for which indemnification is sought.[4]
Contrary to respondent’s position, then, that the city’s indemnification cause of action stems from an allegedly defective product does not alter the general Statute of Limitations rules. It is true, as respondent maintains, that earlier lower court decisions refused to allow an indemnification action based upon a breach of warranty (e.g., Ibach v Donaldson Serv., 38 AD2d 39; C.K.S., Inc. v Borgenicht Sportswear, 22 AD2d 650). But those holdings, repeatedly criticized (see, e.g., Note, An Appraisal of Judicial Reluctance to Imply an Indemnity Contract in Time-Barred Breach of Warranty Suits, 39 St John’s L Rev 361; Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, at pp 234-236), were not premised on Statute of Limitations considerations. Rather, they reflected the then existing substantive limitations of the products liability concept. Recent developments in the products liability area have eroded the theoretical underpinning of such cases (see, e.g., Codling v Paglia, 32 NY2d 330; see, also, Victorson v Bock Laundry Mach. Co., 37 NY2d 395; Velez v Craine & Clark Lbr. Corp., 33 NY2d 117).[5] Indeed, it would be *219 illogical, in view of the breadth of the indemnification concept, to deny indemnity where a duty imposed by the law of products liability is breached, while allowing it in all other instances of breach of duty. No rationale supports that result.
Accordingly, the Statute of Limitations serves as no bar to the city’s third-party action for indemnity. The action accrued upon payment to the injured party, and thus was not barred by the six-year period of limitation (CPLR 213, subd 2).
Respondent Heil also contends that the indemnity action is precluded by subdivision (c) of section 15-108 of the General Obligations Law, inasmuch as the city has settled the action against it. Under that statute, "[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person” (emphasis added). The fatal flaw in respondent’s position is that the General Obligations Law provision, on its face, is applicable only to contribution claims.
As this court has previously noted, "[e]ven upon a cursory reading of the statute, it becomes evident that section 15-108 is meant to be read in conjunction with the contribution rights set forth in article 14” of the CPLR (Riviello v Waldron, 47 NY2d 297, 306, supra; see Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34, 38-39, supra).* ****[6] Section 15-108 *220 was generally designed to foster settlements in multiple party tort cases by prescribing the effects of the settlement and altering rules of law which were not conducive to the negotiating process (Rock v Reed-Prentice Div. of Package Mach. Co., supra, at pp 40-41). Thus, subdivision (a) defines the rights of the plaintiff who settles with one joint tort-feasor, allowing plaintiff to pursue his claim against other joint tort-feasors, with certain, limitations. Subdivision (b) deals with the released tort-feasor, and precludes a claim for contribution from being asserted against him. By the same token, subdivision (c) prohibits the released party from obtaining contribution from the remaining tort-feasors.
The effect of the statute is to permit a joint tort-feasor to buy his peace by terminating, completely, his rights and liabilities in the action. It is obvious that this statutory scheme can find application only where the tort-feasors share, in some degree, responsibility for the wrong. For it is only in such situation that the impact of a settlement upon proportional liability need be considered. By contrast, where indemnity is at issue, one party is alleging that the other party should bear complete responsibility for the tort. Should the party seeking indemnity negotiate a settlement, this in itself would have no consequences upon the indemnity claim. Irrespective of the amount of the settlement, the indemnitor is either totally responsible or not.
Thus, our prior holdings that section 15-108 of the General Obligations Law has no application to indemnity claims are controlling in the present circumstances (Riviello v Waldron, 47 NY2d 297, 306-307, supra; Rock v Reed-Prentice Div. of Package Mach. Co., supra). In short, one who settles a tort action against him may continue to pursue a cause of action for indemnification, unencumbered by section 15-108.
Finally, it cannot be held, as a matter of law, that the city failed to establish a prima facie case of products liability. Both plaintiff, and his coworker, testified that they did not start the hopper mechanism, thus raising a viable issue of fact as to whether the device self-activated. And, since this creates a fact question concerning whether the product performed as intended by the manufacturer, the trier of fact could infer the existence of a defect as of the time of delivery (see, e.g., *221 Codling v Paglia, 32 NY2d 330, 337-338, supra). True, there is evidence in the record tending to negate the inference that a defect existed. But it is for the trier of fact to decide whether to accept that evidence, or to credit the testimony of the two sanitation workers and find that the product malfunctioned due to a latent defect. Thus, the fact finder is generally free to infer, in a products liability case, the existence of a defect upon a showing that the product did not perform as intended.
Accordingly, the order of the Appellate Division should be reversed, with costs, the third-party complaint reinstated, and the action remitted for trial.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, with costs, third-party complaint reinstated and case remitted to Supreme Court, New York County, for a new trial on the third-party complaint.

. The trial court also dismissed the negligence claim, finding no evidence of negligence. The city does not now dispute this ruling.

. The quasi contract was a form adopted by common-law courts to incorporate the equitable principles of unjust enrichment. Thus, although remedies such as indemnity are derived from equitable notions, the action is and has been an action at law (see, e.g., Roberts v Ely, 113 NY 128, 131-132, supra; but cf. Blum v Good Humor Corp., 57 AD2d 911).

. Indeed, at one time it was thought that the cause of action for indemnity could not be brought by impleader in the main action, since the indemnity claim was premature (e.g., Milstein v City of Troy, 272 App Div 625, 626). This view did not prevail, however, and it is settled that an indemnity claim may be asserted, by a third-party action, in the main case (CPLR 1007; Matter of Valstrey Serv. Corp. v Board of Elections, Nassau County, 2 NY2d 413, 416; see, e.g., Grant Co. v Uneeda Doll Co., 19 AD2d 361, affd 15 NY2d 571; Taca Int. Airlines v Rolls Royce of England, 47 Misc 2d 771, 773).

. Indemnity actions have been permitted in a variety of situations. A classic indemnity claim exists, of course, in favor of a person who has been held vicariously liable for the tort of another. Thus, an employer who has been cast in damages, by virtue of respondeat superior, may obtain indemnity from his employee (e.g., Schubert v Schubert Wagon Co., 249 NY 253, 257 [Cardozo, Ch. J.]). In such a case, of course, the underlying breach of duty is tortious in nature. Similarly, where a party is held accountable for another’s breach of contract, indemnity may be recovered. Thus, if the owner of a building is forced to respond in damages for injuries caused by a service contractor’s breach of contract, the owner is entitled to be indemnified by the contractor (see, e.g., Rogers v Dorchester Assoc., 32 NY2d 553, 562-563, supra). And, prior to the rule of Dole v Dow Chem. Co. (30 NY2d 143), one tort-feasor who was only "passively” negligent could maintain an indemnity action against the tort-feasor who was "actively” negligent (e.g., Tipaldi v Riverside Mem. Chapel, 273 App Div 414, affd 298 NY 686).

. Respondent repeatedly asserts that the city seeks recovery for breach of warranty. This is inaccurate. As discussed, the city is asserting a cause of action for *219 indemnification. The allegedly wrongful conduct pleaded in the third-party complaint as the basis for indemnification is Heil’s failure to provide a product "fit for the use for which it was intended and [which] was otherwise dangerous and unsafe for those lawfully using same.” Since the focus of the indemnity claim is on whether the city has discharged a duty which should have been borne by Heil, the products liability assertion is relevant only to determine whether Heil breached a duty owed to the injured sanitation worker. In short, the city does not seek to recover in its own right for products liability; rather, it asserts that Heil breached a duty to the injured sanitation worker and is therefore responsible for damages the city had to pay on account of the breach of duty.

. Section 15-108 of the General Obligations Law states:
"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor’s equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.
"(c) Waiver of contribution. A tortfeasor who has obtained his own release from *220 liability shall not be entitled to contribution from any other person” (added L 1972, ch 830, § 3; amd L 1974, ch 742, § 3).