Wachtler, J.
(dissenting). I disagree with the majority’s holding that plaintiff’s verdict must be reduced in accordance with section 15-108 of the General Obligations Law. Inasmuch as the settling defendant’s relationship to this litigation is one of vicarious liability only, the statute, which sets forth the consequences of a settlement by one of two or more joint tort-feasors, is inapplicable.
Plaintiff brought this action for personal injuries suffered in an automobile collision. Joined as defendants and treated as one unit for purposes of liability were the driver, Karen Bloom, and the owner, Maurice Bloom, of the car that struck plaintiff’s, and MCA Distributing Corporation (MCA), upon whose business Karen Bloom was alleged to be engaged when the accident occurred. Hallman-Adkins Chevrolet, Inc., was also named as defendant, on the theory that it had negligently repaired the brakes on the *791 Bloom automobile. A claim against General Motors Corporation, alleging that the automobile was manufactured and distributed with defective brakes, was settled before trial.
As to the defendants against whom plaintiff went to trial, theories of fault were pleaded only against Karen Bloom and Hallman-Adkins, based upon negligent operation and negligent repair of the car, respectively. Plaintiff sought to impose liability upon Maurice Bloom solely as the owner of the car and upon MCA solely as Karen Bloom’s principal. Hallman-Adkins interposed cross claims seeking contribution from all three defendants. Because Maurice Bloom and MCA were participants in the lawsuit solely as parties potentially vicariously liable for the negligence of Karen Bloom, the trial court instructed the jury to consider these three defendants as one “unit” for purposes of apportioning liability, and to treat Hallman-Adkins as a separate “unit”. Before the jury rendered its verdict, MCA settled with the plaintiff for $40,000.
The jury returned a verdict against the defendants in the amount of $500,000 apportioning 75% of the liability to the “unit” comprised of the Blooms and MCA and the remaining 25% to Hallman-Adkins. The parties agreed to a reduction of the verdict by the amount of General Motors Corporation’s settlement with plaintiff.* Thereafter, Hallman-Adkins sought a further reduction in the verdict by reason of MCA’s settlement. It was urged that, pursuant to section 15-108 of the General Obligations Law, MCA’s settlement with plaintiff required a reduction in the verdict by either the amount of the settlement or the amount of MCA’s equitable share of the damages, whichever is greater. Believing MCA’s equitable share of the damages to be 75%, Hallman-Adkins asserted that plaintiff’s verdict had to be reduced by a corresponding amount. The trial court rejected this argument and instead reduced the verdict only by $40,000, the amount of MCA’s settlement.
The Appellate Division reversed, holding that the verdict must be reduced in accordance with Hallman-Adkins’ request. In an opinion now endorsed by a majority of this *792 court, the Appellate Division begins by recognizing that section 15-108 of the General Obligations Law is not applicable to indemnification claims (citing Riviello v Waldron, 47 NY2d 297). Thus, it would seem that the consequences of the settlement by MCA (a party whose only liability in this lawsuit is vicarious) with plaintiff should not be dictated by the statute. But the Appellate Division comes to a contrary conclusion, holding section 15-108 applicable in this case because of the presence of another tort-feasor’s right to contribution against the settling defendant. Plaintiff’s verdict must be reduced by MCA’s “equitable share of the damages”, according to that court, because “plaintiff has released MCA and has thereby deprived Hallman-Adkins of its right to contribution from MCA” (94 AD2d, at p 425). The court also found that MCA was treated as part of the unit consisting of itself and the Blooms and the unit was found liable for 75% of the damages, and that the same figure should represent MCA’s “equitable share of the damages”.
I disagree with the approach taken by the Appellate Division, and now by this court. Nothing in this situation warrants a departure from our clear holding in Riviello v Waldron (supra) that section 15-108 applies only to a settlement by one of two or more joint tort-feasors. Because MCA is not a joint tort-feasor, the effect of its settlement with plaintiff is to reduce the verdict by the settlement amount only. Moreover, any perceived unfairness in the effect of plaintiff’s release of MCA upon Hallman-Adkins’ contribution rights can be remedied by recognizing that Hallman-Adkins’ rights in this regard were not diminished by an agreement in which it took no part.
Following this court’s decision in Dole v Dow Chem. Co. (30 NY2d 143), which allowed joint, actively negligent tort-feasors to seek contribution among themselves in proportion to their respective degrees of fault, questions arose regarding the extent of those contribution rights when one joint tort-feasor entered into a settlement with the plaintiff. Little case law developed concerning these rights in the brief interval before the legislative response, but the law was clearly moving in the direction of holding contribution rights to be unaffected by the release of one tort-feasor. Thus, it was held that the release of one tort-feasor *793 did not bar the remaining tort-feasors from asserting a cross claim against the settling tort-feasor for apportionment (Blass v Hennessey, 44 AD2d 405) and that the settling tort-feasor had not waived the right to seek apportionment from other tort-feasors (Hain v Hewlett Arcade, 40 AD2d 991). These holdings appeared to be the only appropriate response, given the policy, as established by Dole, that liability should be shared by joint tort-feasors in accordance with their respective degrees of fault. Nevertheless, such holdings created a strong disincentive on the part of tort-feasors to settle with the injured party, since the settler’s position was not much improved after a settlement. The immediate legislative response was the enactment of section 15-108 of the General Obligations Law, the purpose of which is to encourage settlements by joint tort-feasors by affording a measure of finality to the settling tort-feasor’s release from the litigation (Rock v Reed-Prentice Div., 39 NY2d 34, 40-41; Franzek v Calspan Corp., 78 AD2d 134, 140-141; Mielcarek v Knights, 50 AD2d 122, 126; McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108, pp 717-718).
Subdivision (a) of section 15-108 provides that a release given to one of two or more persons liable in tort for the same injury reduces the claim of the injured person against the other tort-feasors to the extent of the amount stipulated in the release, the amount of consideration paid for it, or the amount of the released tort-feasor’s equitable share of the damages, whichever is greatest. Subdivision (b) then eliminates the contribution rights of other tort-feasors against the released tort-feasor, while subdivision (c) eliminates any contribution rights the released tort-feasor may have against the others. Thus, in a situation involving multiple wrongdoers, the effect of a settlement on the rights of the parties is now clearly defined by statute. The question that subsequently arose was whether the statute is equally applicable when an indemnification claim is involved.
In Riviello v Waldron (47 NY2d 297, supra), a bar employee injured a patron, allegedly while acting within the scope of his employment. Prior to trial, the employee *794 settled with the injured party for $25,000. Plaintiff proceeded to trial against the tort-feasor’s employer and recovered judgment in the amount of $200,000. The employer then argued that, pursuant to section 15-108, the verdict had to be reduced by the employee’s “equitable share of the damages”, which was 100% given that the employer’s liability was wholly derivative in nature. This court held, however, that “section 15-108 is meant to be read in conjunction with the contribution rights set forth in article 14 [of the CPLR]” (id., at p 306) and therefore is not applicable where a claim of indemnification is concerned. Support for this conclusion was also found in the purpose of section 15-108, which was to clarify the effect of a settlement upon Dole contribution rights among joint tort-fea-sors.
Not resolved in Riviello was the further issue of whether the employer, having been held liable to the injured party on the basis of the employee’s negligence, could thereafter recover those damages from the settling employee. Several Appellate Division cases had resolved this issue in favor of allowing the claim over (Felice v St. Agnes Hosp., 65 AD2d 388; Heinsohn v Putnam Community Hosp., 65 AD2d 767). The possibility that such a claim would be permitted, with its resulting lack of incentive on the part of the primary wrongdoer to settle, has been the focus of criticism of the Riviello decision (Siegel, NY Prac, § 176, 1981-1982 Pocket Part, at p 53; Recent Development, 44 Alb L Rev 719, 728-729). Despite the disincentive to settlement involved in our holding in Riviello, we did not retreat from our restrictive view of the statute’s applicability.
In McDermott v City of New York (50 NY2d 211, 220), we reaffirmed the Riviello rule of inapplicability of section 15-108 to indemnity claims, holding that “one who settles a tort action against him may continue to pursue a cause of action for indemnification, unencumbered by section 15-108”. Although McDermott involved an indemnity claim by a settling party who had been held vicariously liable to the injured party, there would appear to be no basis for failing to afford the same relief to a nonsettling party held vicariously liable, such as the employer in Riviello.
In the present case, if the only defendants were the Blooms and MCA, it is clear that section 15-108 would not *795 affect the result of the release of one of the defendants. Thus, if the primary wrongdoer, Karen Bloom, had settled, plaintiff would still be entitled to pursue those parties held derivatively liable for Karen’s negligence, except to the extent that damages had been reduced by the settlement amount. Nor would the settlement limit the rights of the other defendants to proceed against Karen for indemnity. Similarly, a settlement by one of the derivatively liable defendants would not preclude the settling defendant’s pursuit of an indemnity claim against Karen, and plaintiff’s rights against the nonsettling defendants would remain intact.
The addition of another actively negligent defendant (Hallman-Adkins) to this situation creates a somewhat more complex problem in defining the results of a release of one of the defendants, but does not justify or require a departure from the rule of section 15-108’s inapplicability to indemnity claims. As to the two actual wrongdoers, Karen Bloom and Hallman-Adkins, the statute is clearly applicable. If one of these joint tort-feasors had settled with plaintiff, the other tort-feasor would have been entitled to reduction of the verdict by the greater of amount or the settling tort-feasor’s equitable share of the damages. Where the release is obtained by a vicariously liable party, however, we should continue to interpret section 15-108 as inapplicable to define the rights of the parties following settlement. Thus, in the present case, MCA’s release is not governed by section 15-108, and the verdict should be reduced only by the settlement amount.
The sole reason offered by the Appellate Division and a majority of this court for a contrary conclusion is the perceived loss of Hallman-Adkins’ contribution rights against MCA. Clearly, Hallman-Adkins’ cross claims seeking contribution from MCA assert valid claims. Those claims were not lost, however, when plaintiff released MCA from further liability to him. Indeed, in the joint tort-feasor situation uncomplicated by the presence of indemnity claims, the thrust of the law prior to section 15-108 was that a settling tort-feasor was not thereby immunized from the contribution claims of other tort-feasors; this was the impetus for enactment of the statute. Moreover, there *796 is no reason in law or logic for holding otherwise in the present context. Absent a statutory directive to the contrary, there can be no question that a plaintiff’s release of one defendant cannot operate to defeat the rights of others who are not parties to the release agreement. Accordingly, Hallman-Adkins’ contribution rights against MCA are unaffected by the release.
I recognize that this approach involves a disincentive to settlement by a party whose liability is derivative or by a party against whom an indemnity claim might be made. But that disincentive was created by our holdings in Rivi-ello and McDermott concerning the statute’s applicability. MCA, by its settlement, obtained only a release from plaintiff’s claims against it; as the employee in Riviello, it did not thereby gain a release from the claims of other parties against it. Equally compelling is the reliance of the litigants, in effectuating settlements, upon our prior broad statements in this complex area. It is unfair to now disavow those holdings without an articulable rationale and to recognize a distinction which I believe could not have been anticipated. Any change in the breadth of section 15-108 should, in my view, be comprehensively addressed by the Legislature.
Order affirmed, etc.

 No issue concerning the amount or method of so reducing the verdict to account for the General Motors settlement is raised by the parties.