OPINION OF THE COURT
Nicholas A. Clemente, J.
Plaintiff, employed by the City of New York (City), was injured at a station house of the fire department where construction work was occurring. He commenced this action against Jenkin Contracting Co., Inc. (Jenkin), Crescent Contracting Corp., L.F. Electrical Installation Corp., C.D.E. Air Conditioning Company, Inc. and D.P. Facilities. Jenkin in turn commenced a third-party action against various parties including the City of New York.
Jenkin’s involvement in this action stems from the fact that it was one of the companies doing work at the station house at which plaintiff was injured. The contract under which Jenkin was working provided: "If the persons or property of the City and of others sustain loss, damage or injury resulting from the *370 negligence or carelessness of the Contractor, or his subcontractors, in their performance of this contract, or from his or their failure to comply with any of the provisions of this contract or of law, the Contractor shall indemnify and hold the City harmless from any and all claims and judgments for damages and from costs and expenses to which the City may be subjected or which it may suffer or incur by reason thereof.”
A bifurcated trial of this action commenced on June 6, 1985. During such trial and before a verdict on liability was rendered, the action was discontinued against some of the parties and settled as to L.F. Electrical Installation Corp. for $137,500 as to D.P. Facilities for $7,500 and as to Walter Schlegel (a third-party defendant) for $2,500. The City of New York agreed to waive a lien for workers’ compensation benefits paid to plaintiff which was in the amount of $55,000 in return for which the plaintiff agreed to indemnify the City for any part of the judgment which the City would ultimately be found responsible to pay.
Subsequently, the jury returned a verdict in which it apportioned negligence as follows:
Jenkins 15% L.F. Electric 20% D.P. Facilities 0% City 55% Plaintiff 10%
After rendition of this verdict a trial of damages commenced. The jury then returned a damage verdict finding that plaintiff suffered total damages of $600,000 which it reduced to an award of $540,000 because of plaintiff’s contributory negligence of 10%. After acceptance of this verdict, I ruled that the action as against the City is dismissed because it is contractually relieved from paying any money. Plaintiff now moves for an order which would direct the entry of a judgment providing the plaintiff have judgment against Jenkin for $392,500.[1] Plaintiff and Jenkin agree that the jury verdict, when memoralized in a judgment, should be reduced by the $147,500 received by plaintiff from parties that settled. They disagree, however, as to the effect upon Jenkin of the agreement between the plaintiff and the City for the latter to waive its workers’ compensation lien.
The issues raised here involve the meaning and effect of *371 General Obligations Law § 15-108 (a) and (c) and CPLR 1401 and 1404 (b). General Obligations Law § 15-108 (a) and (c) provide the following:
"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it or in the amount of the released tortfeasor’s equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest. * * *
"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.”
CPLR 1401 provides: "Except as provided in section 15-108 of the general obligations law, two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.”
CPLR 1404 states:
"(a) Nothing contained in this article shall impair the rights of any person entitled to damages under existing law.
"(b) Nothing contained in this article shall impair any right of indemnity or subrogation under existing law.”
Plaintiff contends that its agreement with the City was not a settlement with a joint tort-feasor so as to fall within the purview of the General Obligations Law and allow Jenkin a setoff. Plaintiff maintains that the relationship between Jenkin and the City was indemnitor/indemnitee so that Jenkin gets no setoff by virtue of the release of the workers’ compensation lien.
Jenkin, on the other hand, contends that it is entitled to a setoff for the 55% share of negligence attributed to the City under the General Obligations Law and that the existence of an indemnity agreement between Jenkin and the City does not change such result.
*372 The City while not otherwise concerned with this motion has interposed an affirmation in which it requests that Jenkin be directed to reimburse it for the waiver of its lien based upon the indemnification agreement between the City and Jenkin.
Analysis of the opposing contentions indicates that two issues are presented for resolution: (1) Does the City’s waiver of its lien affect plaintiff’s action against Jenkin in light of General Obligations Law § 15-108? and (2) Does the City have the right to recoup its lien be it from plaintiff or Jenkin? In my view, both questions must be answered in the negative.
Discussion of these issues must commence with an examination of the meaning of General Obligations Law § 15-108 (a). In Riviello v Waldron (47 NY2d 297, 305) the court explained that provision by stating: "In pertinent part, that section states that a release given to one of two or more tort-feasors liable for the same injury will reduce a plaintiff’s claim against the other tort-feasors by whichever is the greatest among (1) the amount of the release, (2) the consideration paid for it, or (3) 'the amount of the released tortfeasor’s equitable share of the damages’ under CPLR article 14.”
Jenkin is apparently arguing that the City and it are joint tort-feasors and that plaintiff’s claim against Jenkin must be reduced by its 55% "equitable share of the damages”. There is no question that if the instant matter involved only a claim by plaintiff against two joint tort-feasors General Obligations Law § 15-108 would dictate such a result. Jenkin’s position, however, ignores a central factor of this litigation, namely, the position of the City from the outset that Jenkin was contractually bound to indemnify it under the contractual indemnity provision set forth, supra. Hence, the position of plaintiff and the City was in effect that insofar as Jenkin is concerned, the City and Jenkin were one vis-á-vis any negligence to plaintiff. In fact, plaintiff, because of the Workers’ Compensation Law, never even made a claim against the City. Moreover, reason dictates that there was a settlement between plaintiff and the City only because of the realization that under the indemnity provision between the City and Jenkin any recovery would ultimately come only from Jenkin. When the concern is with indemnity, the effect of General Obligations Law § 15-108 on a settlement was set forth as follows in McDermott v City of New York (50 NY2d 211, 219-220):
"As this court has previously noted, '[e]ven upon a cursory *373 reading of the statute, it becomes evident that section 15-108 is meant to be read in conjunction with the contribution rights set forth in article 14’ of the CPLR (Riviello v Waldron, 47 NY2d 297, 306, supra; see Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34, 38-39, supra). Section 15-108 was generally designed to foster settlements in multiple party tort cases by prescribing the effects of the settlement and altering rules of law which were not conducive to the negotiating process (Rock v Reed-Prentice Div. of Package Mach. Co., supra, at pp 40-41) * * *
"The effect of the statute is to permit a joint tort-feasor to buy his peace by terminating, completely, his rights and liabilities in the action. It is obvious that this statutory scheme can find application only where the tort-feasors share, in some degree, responsibility for the wrong. For it is only in such situation that the impact of a settlement upon proportional liability need be considered. By contrast, where indemnity is at issue, one party is alleging that the other party should bear complete responsibility for the tort. Should the party seeking indemnity negotiate a settlement, this in itself would have no consequences upon the indemnity claim. Irrespective of the amount of the settlement, the indemnitor is either totally responsible or not.
"Thus, our prior holdings that section 15-108 of the General Obligations Law has no application to indemnity claims are controlling in the present circumstances (Riviello v Waldron, 47 NY2d 297, 306-307, supra; Rock v Reed-Prentice Div. of Package Mach. Co., supra). ”
While McDermott is not completely on point since it involves claims between tort-feasors rather than between a plaintiff and a tort-feasor, its approach is, nevertheless, instructive.
Two principles emanate from McDermott. One is that General Obligations Law § 15-108 is meant to foster settlements rather than impede them and that the statute has no application when we deal with indemnity.
Also instructive at bar is Dallas & Mavis Forwarding Co. v Gleason Works (78 AD2d 966). There, plaintiff’s truck transported machines from defendant, a shipper, to the Eaton Corp., a consignee. Defendant agreed to indemnify Eaton Corp. for all losses, among other things, resulting from the transportation. There was a loss after which plaintiff settled with Eaton Corp. by paying the full amount of the claim and *374 taking back from Eaton Corp. a general release and an assignment of its contractual rights against defendant shipper. Plaintiff as assignee of Eaton Corp. then commenced this action against defendant, inter alia, based upon defendant’s agreement to indemnify the Eaton .Corp. In upholding such a cause of action, the court stated at pages 966-967, "Subdivision (a) of section 15-108 of the General Obligations Law * * * is not a bar to plaintiff’s cause of action based solely on the indemnification agreement, which operated to shift the entire loss irrespective of the relative degrees of fault of the parties to the contract (citations omitted).”
Analogously in the case at bar, plaintiff by means of his settlement with the City, decided to put himself in the shoes of the City vis-á-vis Jenkin and risk that the court would rule that the City’s contract of indemnity did, in fact, free it of all liability.
Following the approach set forth in McDermott and Dallas necessitates finding in favor of the instant plaintiff’s position that judgment should be entered in the amount of $392,500. To say that plaintiff’s verdict is reduced by the equitable share of the City’s negligence would obviously not give a plaintiff in a case such as this one any motive to settle with a party in the City’s position. More importantly, however, is the fact that what is involved here between Jenkin and the City and derivatively for plaintiff is a claim founded on contractual indemnification. As McDermott indicates, in such circumstances, there is no reason to concern ourselves with equitable shares of the damage or who paid what.
Remaining for resolution is the City’s request for it to be reimbursed for its workers’ compensation lien. Such request must be denied.
The City obviously cannot mean for plaintiff to reimburse it, since the lien was unequivocally waived as to plaintiff.
What must be next considered is whether Jenkin should pay it. I conclude that it should not. The City by settling out of the action lost any further rights except as reserved by the settlement. In addition, Jenkin’s liability is limited here by virtue of the jury verdict to $392,500. For Jenkin to pay the City would reduce what it would be required to pay plaintiff. As indicated, the City waived its right to recoup from plaintiff. Accordingly, the City by virtue of the settlement is precluded from recovering the amount of its lien.
Further support for this view is found in the City’s cross *375 claim against Jenkin. Examination of such cross claim shows that nowhere within it does the City seek recovery from Jenkin for any workers’ compensation benefits received by plaintiff. Hence, even the pleading interposed by the City in this action would preclude granting it the relief it now seeks.[2]
Accordingly, the judgment should be entered as requested by plaintiff.

. The clerk has refused to enter judgment because of the issues raised by Jenkin as to the amount it is to pay.

. The conclusions reached here should not be misunderstood as finding that the City received no benefit for its waiver. Rather, in a case involving serious injuries the City under the terms of its settlement was protected from having to make any payment in the event that Jenkin was financially unable to pay the sum found due by the jury.