Dale R. BRODEUR, Sr., Plaintiff,

v.

Sean McNAMEE, William Brodeur, and Northeast Fabricators, LLC., Defendants.

No. 3:02–CV–0823.

United States District Court, N.D. New York.

March 14, 2003.

Office of Ronald Cohen, Ronald Cohen, Esq., of counsel, New York, NY, for Plaintiff.

Coughlin, Gehart Law Firm, Richard B. Long, Esq., of counsel, Binghamton, NY, for Defendants William Brodeur and Northeast Fabricators, LLC.

Office of Terence P. O'Leary, Terence P. O'Leary, Esq., of counsel, Walton, NY, for Defendant Sean McNamee.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

### INTRODUCTION

Defendants move to dismiss this contract action under Fed.R.Civ.P. 12(b)(1) on the ground that the claims before this Court are, in effect, a challenge to a state court judgment and are therefore barred by the *Rooker–Feldman* doctrine. For the reasons set forth below, the motion is denied.

### COMPLAINT

In his complaint, filed June 21, 2002, plaintiff Dale R. Brodeur, Sr. ("Brodeur, Sr.") alleges that defendants William Brodeur and Sean McNamee are or were shareholders, officers and/or employees of defendant Northeast Fabricators, LLC. The complaint further states:

Plaintiff and defendants entered into a valid and enforceable written agreement dated July 24, 1997.

Defendants, at ¶ 8 of the parties' written agreement "agree[d] to hold Dale R. Brodeur, Sr. and IMF harmless from

any liability in connection with all indebtedness secured by mortgages upon the premises at 35 William Street, Walton, New York[.]"

Defendant McNamee signed the agreement dated July 24, 1997 as a representative of defendant Northeast Fabricators LLC [and] also signed said agreement in his individual capacity.

\*      \*      \*      \*      \*      \*

Defendant McNamee in the year 2002 breached the agreement of July [24], 1997 by obtaining a judgment against plaintiff for a liability allegedly arising from a purported personal guarantee of a mortgage on the real property 35 William Street, Walton, New York, granted by Fabricated Metals for Electronics, Inc. (a discharged Bankrupt) to the New York State Jobs Development Authority (JDA).

\*      \*      \*      \*      \*      \*

Defendant McNamee, in continuing breach of the parties' agreement of July [24], 199[7], is pursuing collections activity against plaintiff in the State of North Carolina.

Defendants Northeast Fabricators LLC and defendant William Brodeur have not satisfied McNamee's judgment as they are bound to do under the agreement of July [24], 1997.

Defendants Northeast Fabricators LLC and William Brodeur have not defended plaintiff (and are not defending plaintiff) nor have they acted to hold him harmless from the claims of defendant McNamee as they are bound to do under the agreement of July [24], 1997.

(Paragraph numbering and references to exhibits omitted.) Brodeur, Sr. seeks to recover $750,000 plus interest, costs, and attorney's fees. He states that the Court has diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

## NEW YORK STATE LITIGATION

In July 2000, Brodeur, Sr. and others commenced an action in New York Supreme Court arising out of business transactions involving the parties herein and others.[1] McNamee, who held a promissory note guaranteed by Brodeur, Sr., interposed a counterclaim seeking judgment on the guarantee and subsequently moved for summary judgment on the counterclaim. In opposition to the motion, Brodeur, Sr. sought to interpose a release set forth in a contract dated July 24, 1997, signed by McNamee, Brodeur, Sr. and others. In a decision dated January 18, 2002, Hon. Patrick D. Monserrate, J.S.C. held that Brodeur, Sr. had waived the affirmative defense of release by failing to plead it. Judge Monserrate granted summary judgment to McNamee on the counterclaim, stating:

> The motion of McNamee for summary judgment on its counterclaim will be granted. Release is ... a defense which is waived if the defending party does not either raise it in a pre-answer motion or in the responsive pleading [CPLR 3211(a)(5) and 3211(e)]. Plaintiff Brodeur, Sr. did neither.

The instant case presents the very situation ·which the statute is designed to prevent. The statute requires a responsive pleading to "plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading such as ... release" [CPLR 3018(b)]. The release alleged here is part of a July 24, 1997 agreement which, defendants assert, was proffered to plaintiffs but rejected. Defendants' attorneys submitted to plaintiffs' then-attorney, Frederick Griffen, a copy of such proposed agreement which had been signed by defendants. However, by letter dated July 29th and copied to Brodeur, ·Sr., Mr. Griffen represented that Mr. Brodeur, Sr. and IMF refused to sign such agreement. Again on November 13th plaintiffs' substituted counsel sent a letter to William Brodeur and copied to Brodeur, Sr. advising that plaintiffs would not agree to the release

---

1. In his January 18, 2002 decision, Judge Monserrate summarized the background of the state action as follows:

   Following the 1990 bankruptcy of Fabricated Metals for Electronics, Inc. (FME), plaintiff Industrial Metal Fabrications of Delaware County, Inc. (IMF) purchased its assets. Plaintiffs Cindy Brodeur and Dale R. Brodeur, Jr. are the officers, directors and shareholders of IMF; plaintiff Dale R. Brodeur, Sr. (Brodeur, Sr.) is its managing agent. Defendant William Brodeur, Brodeur, Sr.'s brother, was formerly an officer, director, shareholder and managing agent of IMF....

   In and by his July 2000 action plaintiffs allege that codefendants Sean McNamee, William Brodeur, W.F. McNamee & Company, LLC, and Northeast Fabricators, LLC schemed to take over the assets of IMF and to deprive it of business opportunities.... They also make claims against William Brodeur for self-dealing and breach of fiduciary duty to the corporation. Finally

   plaintiffs seek imposition of a constructive trust against Northeast Fabricators, LLC with respect to the assets alleged to belong to IMF.

   \*   \*   \*   \*   \*   \*

   On June 16, 1989 FME executed a $340,000.00 promissory note in favor of Industries for Delaware County, Inc. (IDC); Brodeur, Sr. personally guaranteed the note, which was also secured by a mortgage against real property located at 30–35 Williams Street in the Village of Walton (Delaware County). When IMF acquired title to the real property, it did so subject to these and other liens and mortgages. McNamee, as the current holder by assignment of the IDC mortgage, asserts a counterclaim against Brodeur, Sr. for enforcement of the personal guarantee. In opposition to McNamee's motion for summary judgment on the counterclaim, Brodeur, Sr. asserts the existence of a release contained in a July 24, 1997 agreement.

proposed in that agreement. Plaintiffs apparently sometime later decided to execute the proposed agreement, without notifying defendants of same. Consequently, Brodeur, Sr.'s assertion of the release as a defense to the guarantee constitutes the sort of surprise which the statute requires be pleaded in the first instance or be waived.

## DISCUSSION

In arguing that this Court lacks subject-matter jurisdiction, McNamee relies on the *Rooker–Feldman* doctrine, which holds that federal district courts lack subject matter jurisdiction over claims that "effectively challenge state court judgments." *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir.2002); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206; *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The doctrine covers matters directly decided in state court as well as matters "inextricably intertwined" with state court determinations. *See id.; Hachamovitch v. DeBuono*, 159 F.3d 687, 694 (2d Cir.1998).

The Second Circuit has interpreted the term "inextricably intertwined" to mean "at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ... subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion."[2] *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996). In assessing the preclusive effect of a state court judgment, federal courts apply state law. *See West v. Ruff*, 961 F.2d 1064, 1065 (2d Cir.1992). New York's law of preclusion

comprises two concepts: res judicata (claim preclusion) and collateral estoppel (issue preclusion). *See Moccio*, 95 F.3d at 200. In New York, collateral estoppel applies when the issue is identical to one which "has necessarily been decided in the prior action and is decisive of the present action," and the party to be estopped had a "full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). With respect to res judicata, New York has adopted the "transactional analysis" approach, that is, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981).

On this motion, McNamee contends that the issue presented here—whether the July 24, 1997 agreement protects Brodeur, Sr. from liability upon the guarantee—has already been decided against Brodeur, Sr. in the state court action. Therefore, McNamee urges, under the *Rooker–Feldman* doctrine, Brodeur, Sr. is precluded from relitigating the issue in this action.

Brodeur, Sr. responds that the present complaint asserts claims which are not "inextricably intertwined" with the state court judgment. He argues: "Plaintiff's cause of action for breach accrued with McNamee's seeking to collect on the personal guaranty, reaccrued when McNamee obtained the New York State court judgment and again re-accrued when McNamee undertook collections activity in North Carolina. McNamee's legal duties under

---

**2.** Although *Moccio* specifies a "minimum" standard, the Second Circuit has subsequently declined to extend scope of that standard.

*See, e.g., Phifer v. City of New York*, 289 F.3d 49, 56–57 (2d Cir.2002); *Hachamovitch v. DeBuono*, 159 F.3d 687, 696 (2d Cir.1998).

the parties' agreement are not confined to a single instance but his continuing conduct causes the action to continue to accrue with each act of breach."

██  The Court considers first whether Brodeur, Sr.'s claims in the instant complaint would be barred under the principles of collateral estoppel. Judge Monserrate's decision foreclosing Brodeur, Sr. from relying on the July 24, 1997 agreement was based on procedural grounds. He did not reach the merits and made no factual findings regarding the validity, construction or effect of the July 24, 1997 agreement. Therefore, the issues before this Court with regard to the validity, construction or effect of that agreement are not identical to any issue which has necessarily been decided in the prior action, *see Schwartz*, 24 N.Y.2d at 71, 298 N.Y.S.2d 955, 246 N.E.2d 725, and collateral estoppel does not apply.

██  The Court concludes, however, that the doctrine of res judicata bars Brodeur, Sr.'s present claims of release based on the July 24, 1997 agreement. The release claims could have been raised as defenses in the state court action and, if accepted, would have impaired McNamee's rights established in that action. *See Santiago v. Lalani*, 256 A.D.2d 397, 681 N.Y.S.2d 577, 578 (2d Dep't 1998). Although New York does not have a compulsory counterclaim rule, "a party is not free to remain silent in an action in which he is the defendant and

then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *Henry Modell & Co. v. Minister, Elders & Deacons of Ref. Prot. Dutch Church*, 68 N.Y.2d 456, 461, 510 N.Y.S.2d 63, 502 N.E.2d 978 (1986); *accord Se Dae Yang v. Korea First Bank*, 247 A.D.2d 237, 668 N.Y.S.2d 363, 363–64 (1st Dep't 1998). Judge Monserrate has held that McNamee is entitled to recover from Brodeur, Sr. on the guarantee. In doing so, he necessarily rejected all defenses Brodeur, Sr. raised or might have raised. Any holding by this Court to the effect that the July 24, 1997 agreement released Brodeur, Sr. from liability on the guarantee would unavoidably conflict with Judge Monserrate's judgment.

██  Brodeur, Sr. contends, however, that he is now proceeding against McNamee on a claim for indemnification,[3] as well as release. A claim by Brodeur, Sr. to be indemnified for liability on McNamee's judgment does not "aris[e] out of the same transaction or series of transactions" as the underlying state court action which culminated in the judgment, *see O'Brien*, 54 N.Y.2d at 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158, and thus is not barred by res judicata. Under New York law, a claim to be indemnified for liability on a judgment is not complete until a loss is suffered and, indeed, does not accrue for statute of limitations purposes until payment by the party seeking indemnity.[4] *See McDermott v.*

**3.** The Court notes that the July 24, 1997 agreement is not an express agreement to indemnify; rather, by its terms it is an agreement to "release and hold harmless." The term "hold harmless" is defined as "To absolve (another party) from any responsibility for damage or other liability arising from the transaction; indemnify." Black's Law Dictionary (7th ed.1999). Thus, to hold harmless may mean either to release or to indemnify. The merits of Brodeur, Sr.'s claim for indem-

nification are not, however, before the Court on this motion.

**4.** In New York, indemnification claims are often asserted in the main case, although they may be sued separately. As the *McDermott* court explained: "[A]t one time it was thought that the cause of action for indemnity could not be brought by impleader in the main action, since the indemnity claim was premature. This view did not prevail, however, and it is settled that an indemnity claim

*City of New York,* 50 N.Y.2d 211, 217–18, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980). Thus, a claim for indemnity on a judgment is conceptually unrelated to the underlying action which culminated in that judgment and may be pursued in a separate action. *See generally id.; Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (rejecting claim preclusion where second action concerns a transaction occurring after commencement of prior litigation). Brodeur, Sr. may therefore obtain indemnification for McNamee's judgment without impairing that judgment itself. It follows, then, that his federal indemnification claim does not amount to a challenge to the state court judgment such as would be barred by *Rooker–Feldman.*[5]

Accordingly, the papers before the Court constitute a sufficient showing of subject-matter jurisdiction to withstand this motion under Rule 12(b)(1). *See generally United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994) (stating that the burden of proving subject-matter jurisdiction is on the party asserting it). It is therefore

ORDERED that the motion by Sean McNamee to dismiss the complaint is denied.

IT IS SO ORDERED.

may be asserted, by a third-party action, in the main case." *McDermott v. City of New York,* 50 N.Y.2d 211, 218 n. 3, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980) (citations omitted).

5. If, however, a New York appellate court ultimately overturns Judge Monserrate's judgment and holds that he erred in precluding Brodeur, Sr. from relying on July 24, 1997 agreement, Judge Monserrate may be required to address the validity and meaning of that agreement. In that event, district court will likely be called upon to revisit the issue of the applicability of the *Rooker–Feldman* doctrine in the instant action.