OPINION OF THE COURT
Ira B. Warshawsky, J.
Plaintiffs Ona Guthartz, First Wall Securities, Inc. and Alan Guthartz, as custodian for Jason Guthartz, bring this action derivatively (Business Corporation Law § 626) on behalf of nominal defendant State Bancorp, Inc. (State Bank or Bank) against its officers and directors alleging breach of fiduciary duty and corporate waste. Before the court are motions by the non-answering defendants for an order pursuant to CPLR 3211 (a) (5) dismissing the first cause of action as being barred by the statute of limitations or, in the alternative, for an order striking from the complaint all allegations based upon acts, or omissions prior to July 17, 2001, motions by the answering defendants, for summary judgment on the same grounds, and a motion by defendant Braun to dismiss on the ground of lack of in personam jurisdiction.
State Bank is a commercial bank where in October of 1999, Island Mortgage Network Inc. had several accounts. Island Mortgage perpetrated a fraud upon the warehouse lenders who had committed to fund or to purchase mortgages originated by Island Mortgage. Funds from the three or four mortgage lend *863 ers were wired into an account at State Bank, seemingly an escrow and/or trust account, to fund the mortgages at closing, but were diverted to other unauthorized accounts to be used for other purposes. Each day checks, which had been written at a mortgage loan closing the day before, from an Island Mortgage account, could not be paid for insufficient, funds. Each morning Island Mortgage would transfer funds among their accounts and would issue a stop payment order for a large number of checks. Sometimes the checks were merely reissued.
On June 30, 2000, the New York State Department of Banking suspended Island Mortgage’s license, and, on July 19, 2000, Island Mortgage filed for bankruptcy. The trustee in bankruptcy described the fraud “ ‘as a large-scale pyramid scheme through which the Warehouse Lenders, closing agents and other creditors were defrauded of tens of millions of Dollars.’ ” (Complaint 1154.)
Beginning in June 2002, lawsuits by the warehouse lenders ensued in the Federal Court for the Eastern District of New York with State Bank named as a defendant. In November of 2005, State Bank settled the lawsuits with two lenders, Household Commercial Financial Services and Matrix Capital Bank. In January of 2006, State Bank took a verdict for $43,856,743 plus interest in the lawsuit commenced by RMST, a third warehouse lender. Before appeal the RMST case was settled for $65 million. The claim upon which RMST prevailed was, as found by the jury, substantially assisting Island Mortgage in its fraud of RMST. Another claim of breach of fiduciary duty was dismissed on the grounds that State Bank owed no fiduciary duty to RMST.
There was combined “damage to shareholders’ equity and share value by ‘over $100 million lost from 2002 to 2006 in the Island Mortgage litigation.’ ” (Complaint It 91 [a].) After the Eastern District suits were concluded, the directors and officers of State Bank awarded the officers bonuses for their work in settling the lawsuits. They are the same officers who were found guilty of aiding and abetting a fraud. The officers and directors offered generous retirement packages to 18 members of management who had been there at the time of the fraud, including defendant Goldrick, the CEO, who had already resigned. Two other director-employees, Rowe and Merzbacher, were promoted. In short, those charged with oversight of the Bank during the period of time when there was found to have been aiding and abetting Island Mortgage in committing fraud were seemingly *864 rewarded rather than punished or fired. The aforesaid posttrial conduct forms the basis of the second cause of action. However, only the breach of fiduciary duty cause of action is the subject of dismissal in the motion sub judice.
In the first cause of action, plaintiffs allege that the “ [individual [defendants breached their fiduciary duties of good faith because they each either knew or should have known that State Bank senior management had engaged in imprudent conduct in causing the Company to aid and abet the Island Mortgage fraud.” (Complaint 11 42.) The “[ojfficer [defendants breached their fiduciary duties of good faith by: (i) abdicating their responsibilities to prudently supervise the operations of State Bank; and/or (ii) actively causing the Company to violate the law by aiding and abetting the Island Mortgage fraud.” (Complaint 1i 44.) The trustee in bankruptcy, again, described the scenario in informative words:
“State Bank permitted Island Mortgage and Action Abstract to transfer monies deposited in certain trust accounts held in the name of separate corporations and intended to fund mortgage closings out of those accounts and into account held in the name of Island Mortgage and others for use in general corporate purposes; and State Bank allowed the Island Entities to run multi-million dollar overdrafts, on a routine basis in the principal trust account used to fund mortgage closings.” (Complaint If 54 [c], [d].)
Certain defendants have filed a pre-answer motion to dismiss and others have moved for summary judgment since they have already answered (Dulik, Munson, Rueck, Hennessy, McKeon and Simons); the gravamen of the defense to the first cause of action is the same as to all moving defendants. Pursuant to CPLR 213 (7) a derivative action must be brought within six years.
This action was commenced on July 17, 2007 with a complaint that closely mimics the complaint in the adversary proceedings brought by the warehouse lenders against State Bank in the Eastern District. The events underlying those actions took place before July 17, 2001. It was from 1999 to June of 2000 that Island Mortgage diverted the money deposited into its State Bank account to fund mortgages with a pyramid scheme that was implemented by many returned checks, an inordinate amount of stop payments, and a disproportionately small account balance.
*865 Movants argue that the alleged failure to supervise the Island Mortgage accounts occurred before July 2000, and in the State of New York it is the law that the statute of limitations for a shareholder derivative suit alleging a breach of fiduciary duty begins to run from the commission of the wrong, irrespective of the date of discovery. (Chance v Guaranty Trust Co., 282 NY 656 [1940]; North Fork Preserve, Inc. v Kaplan, 31 AD3d 403 [2d Dept 2006].) The officers, directors and managers of State Bank were found guilty, or pleaded, to either not noticing the strikingly unconventional activity of Island Mortgage, or noticing it but not wishing to interfere in a way that would endanger the generous fees engendered. Although the aforesaid conduct is denied as constituting aiding and abetting a fraud, no one has seriously denied that a daily morning ritual whereby checks written on insufficient funds were covered and stop payment orders were issued, while the warehouse lenders were depositing sufficient sums of money in trust accounts to be used to fund such loans. The verdict in federal court speaks for itself. In short, the fraud, as between the warehouse lenders and the Bank’s customer occurred in 2000 and 2001, and suit on that activity is time-barred.
Plaintiffs oppose the motion on the grounds that the statute begins to run when the cause of action accrues (Aetna Life & Cas. Co. v Nelson, 67 NY2d 169 [1986]), and this cause of action for the director’s and officer’s breach of fiduciary duty accrued when State Bank experienced damage. Thus, it was the 2005 and 2006 settlement and jury verdict that triggered State Bank’s injury and signaled the existence of a derivative claim. “The Statute of Limitations begins to run once a cause of action accrues . . . that is, when all the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court.” (Id. at 175.) To try this case on the events of 2000-2001 would be to retry the cases in yet another forum. The limitations period started to run from 2005 to 2007 when liability was found as to the warehouse lender, and damage caused to the Bank, rather than when the relationship and the conduct ended in June of 2000.
To summarize, defendant proposes that the six-year limitations period bars this action because the warehouse lender loans — which the Bank allowed Island Mortgage to misappropriate — were not deposited in the Bank after June of 2000, but *866 suit was not filed until 2007. (Toscano v Toscano, 285 AD2d 590 [2001].) The limitations period begins to run from the date of accrual. The date of accrual is the date of commission of the tort, not the date of discovery. (Matter of Skorr v Skorr Steel Co., Inc., 29 AD3d 594 [2d Dept 2006].) All of the Bank’s inaction in the presence of and knowledge of Island Mortgage’s use of funds wired into accounts for funding mortgages took place before June 2000. Therefore suit on any occurrence prior to June 2001 is time-barred.
Movants correctly state the law. Their application of the law to the facts is incorrect; this action sounding in tort would be time-barred were it brought against Island Mortgage. However, it is not, and the shareholders’ cause of action against the corporation’s officers and directors accrued when the elements of a claim for breach of fiduciary duty could be pleaded. “As a general proposition it is upon injury that a legal right to relief arises in a tort action and the Statute of Limitations begins to run.” (Ackerman v Price Waterhouse, 84 NY2d 535, 541 [1994].)
“[T]o establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant and damages that were directly caused by defendant’s misconduct.” (Kurtzman v Bergstol, 40 AD3d 588, 590 [2d Dept 2007].)
It would be grasping at the proverbial slender reed to proclaim injury to State Bank as a result of the unlawful but profitable machinations of one customer. The shareholders only rose to their own defense when the corporation of which they are common owners suffered injury, damage and a large capital loss, and then rewarded those in charge for facilitating that circumstance.
The corporation, State Bank, and, therefore, its shareholders, did not suffer damages until the settlements with Household Commercial Financial Services and Matrix Capital Bank in November of 2005, and the verdict in January of 2006, and then the postverdict settlement with RMST.
Two recent theories by which plaintiffs defend the motion must be addressed. Plaintiffs argue that, although it is considered a breach of the directors’ duty to the shareholders to act in good faith for them to reward the officers and directors for conduct that resulted in millions of dollars of losses, this action is in the nature of indemnification for which the statute is six years dating from payment of the settlement or judgment. *867 (McNeil v Austin, NYLJ, Oct. 8, 1992, at 24, col 7 [Sup Ct, NY County].)
The argument is determined to be devoid of merit. The officers and directors are being sued for their own breach of duty owed to the shareholders. The duty runs from the officers and directors to the shareholders. Yet, the theory of indemnity rests upon a
“well-settled principle that ‘[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity’. (Restatement, Restitution, § 76; see McDermott v City of New York, 50 NY2d 211, 217.)” (State of New York v Stewart’s Ice Cream Co., 64 NY2d 83, 88 [1984].)
This case is about the failure to perform a duty that only the officers and directors of the Bank could perform, as those in charge of managing the corporation. (Business Corporation Law §§ 701, 715.) As the persons who act for the corporation, it is the corporation which suffered the loss and the corporation which shall recover it. (See Bedessee Imports, Inc. v Cook, Hall & Hyde, Inc., 45 AD3d 792, 796 [2007] [“(A) party which has actually participated in the wrong doing is not entitled to indemnification”].)
Finally, at oral argument, plaintiff proposed to the court that defendants cannot benefit from the statute of limitations when they were charged with the duty of asserting the claim before the statute of limitations had run. (PET, Inc. v Lustig, 77 AD2d 455 [4th Dept 1980]; General Obligations Law § 17-103.) The issue of whether the defendants had a duty to bring this action is subsumed in the demand requirement of shareholder derivative actions, and the litigation committee formed to investigate the circumstances of this action. Though the court finds there may be great strength in this theory, as a practical matter, since this court has found that the statute of limitations is not a bar to this suit, no further review of this argument is warranted.
On the basis of the foregoing, it is ordered that the motions to dismiss the first cause of action and the motions for summary judgment on the first cause of action are denied.
Turning finally to the motion of defendant Braun to dismiss the complaint for lack of jurisdiction, it is ordered that a *868 traverse hearing will be held on April 25, 2008, at 9:30 a.m., insofar as the conflicting assertions found in the record show that there is a question of fact which cannot be resolved without a hearing.