OPINION OF THE COURT
Ira B. Harkavy, J.
The court is required to determine the validity of an indemnification clause in a lease between Arenia and Ernestine Institute, Inc. as landlord-lessor (Arenia) and the City of New York, as tenant-lessee (City).
On or about May 4, 1972, pursuant to a resolution of the Board of Estimate, adopted November 11, 1971, the City entered into a lease agreement leasing from Arenia the entire premises known as 19 Grant Square, Brooklyn, New York. The leased building was to be utilized by the Department of Social Services as a senior citizen’s center along with a child care facility.
On April 15, 1985, plaintiff, Rosemary Taylor, left the building by the main exit and started descending the front steps to get to the sidewalk. As she was descending, she stepped upon an accumulation of broken glass, lost her footing and fell with her right hand coming into contact with the broken glass. Her right hand was severely cut, causing injury to nerves and tendons with permanent injury to the middle three fingers of her right hand.
The issue of liability was submitted to a jury which apportioned negligence in accordance with Dole v Dow Chem. Co. (30 NY2d 143). The jury found defendant, City, 70% negligent, defendant, Arenia, 20% negligent and the plaintiff, Rosemary Taylor, 10% negligent. The jury then awarded plaintiff for her damages a verdict in the aggregate amount of $800,000.
*1031 Pursuant to a resolution of the Board of Estimate, adopted November 11, 1971, the tenant, City, was "to save the landlord harmless against all claims for all injuries resulting from tenant’s negligence in connection with the occupancy of these premises.” Based upon the resolution of the Board of Estimate, article 10 of the lease agreement dated May 4, 1972 read as follows: "10. To save the landlord harmless against all claims for all injuries resulting from tenant’s negligence in connection with its occupancy of these premises.”
Defendant, City, contends that General Obligations Law § 5-321 makes the indemnification clause in article 10 of the lease void and unenforceable, and even if the court finds the article enforceable, that the lease does not reflect "an unmistakable intent” of the parties that the landlord is to be granted indemnification for its own negligence rather than merely contribution for the tenant’s proportionate share of liability.
Defendant, Arenia, contends that the City’s contractual obligation, to indemnify them as landlord, is valid under the General Obligations Law and that the clause in the lease is clear and it shows an unmistakable intention of the parties that complete indemnity is triggered once the jury finds the City negligent to any degree.
The issues raised, which must be determined by this court, are as follows: (1) Does the indemnification clause in article 10 of the lease violate General Obligations Law § 5-321 making the lease provision void and unenforceable? and (2) If the lease provision is not void and unenforceable, was there an unmistakable intent of the parties that the tenant (City) should indemnify the landlord in a circumstance where both the landlord and tenant were found negligent?
General Obligations Law § 5-321 reads as follows:
"Agreements exempting lessors from liability for negligence void and unenforceable
"Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable.”
General Obligations Law § 5-321 essentially provides that agreements that would exempt lessors from liability for the *1032 lessor’s negligence are void and unenforceable, since such an arrangement would be against public policy.
The legislative history of General Obligations Law § 5-321 and the wording of the statute " 'exempting the lessor from liability for damages for injuries * * * resulting from the negligence of the lessor’ strongly suggests that it was directed primarily to exculpatory clauses in leases whereby lessors are excused from direct liability for otherwise valid claims which might be brought against them by others.” (Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153, 160 [1977].) The legislation was passed in a large part as a reaction to the practice of landlords including indemnification agreements in their leases with residential tenants. In considering the legislation, the Legislature looked at the unequal bargaining power between residential tenants and landlords. Based upon their findings, General Obligations Law § 5-321 was passed making indemnification clauses exculpating landlords for their own negligence in maintaining buildings void and unenforceable.
In this matter it was the tenant-lessee, the City of New York, who provided the terms of the indemnification, both in the lease agreement and the resolution enacted by the Board of Estimate. The parties to the lease can be fairly categorized as "sophisticated business people” who negotiated, agreed and accepted the terms of the lease as it was executed. If any party had extra leverage, it was the City of New York who was agreeing to lease a "specialty” building from the landlord, and who required the landlord, at the landlord’s own cost and expense, to renovate the "building according to plans and specifications prepared by the Department of Social Services of the City of New York as more fully set forth in section 1 of the lease. Under the circumstances herein, the exculpation of the landlord from any liability caused or occasioned by the use or occupancy of the premises is not void and unenforceable as against public policy. (La Vack v National Shoes, 124 AD2d 352 [3d Dept 1986].)
If the action was brought by the tenant for damages due to the negligence of the landlord, the landlord could not use the indemnification clause of the lease as a defense. But this is not the case herein. The case herein is a third-party claim for personal injuries in which both the landlord and the tenant have been found negligent. It is the third-party action coupled with the finding that the tenant was negligent that triggers the indemnification responsibilities of the tenant, City of New York. In the face of the plaintiffs third-party claim, the *1033 contractual arrangements between the City and Arenia remains a valid binding obligation under General Obligations Law § 5-321.
The jury found both the tenant, City of New York, and the landlord, Arenia, negligent. They are jointly and severally liable. Each» defendant is jointly and severally liable to the plaintiff for the whole amount of the judgment. The plaintiff can collect the whole judgment from either or both of the defendants regardless of the jury’s apportionment of liability. Therefore, one defendant can contract with another defendant to be liable for the payment of the joint obligation of both. General Obligations Law § 5-321 does not prohibit such an arrangement. In the instant case the tenant covenanted and agreed to indemnify the landlord for claims where there is negligence on the part of the tenant or on the part of both of them.
The City points to the case of Pellegrino v Walker Theatre (127 AD2d 574 [2d Dept 1987]) for the proposition that General Obligations Law § 5-321 prohibits the éxemption of a lessor from liability for its own acts. However a reading of Pellegrino shows that the decision was made on a motion for summary judgment and the court found that "[t]he existence of factual issues * * * which would constitute evidence of negligence * * * precludes the granting of their [third-party] motions for summary judgment” (supra, at 575). The instant case is distinguishable in that a jury has already determined that the defendants are both negligent and as such, jointly and severally liable for payment of plaintiff’s judgment. (See, Lake v Watertown Natl. Bank, 31 Misc 2d 336 [1961].)
It should be noted that even if the accident occurred after July 30, 1986, despite CPLR 1601 limiting liability for noneconomic losses of persons jointly liable, the City would still be severally and jointly liable for plaintiff’s personal injuries since the City was found to be more than 50% liable.
Defendant, City, further contends that the lease does not reflect an "unmistakable intent” of the parties that the landlord-lessor is to be indemnified for landlord’s liability for negligence with the City paying the entire verdict in contrast to each defendant contributing its proportionate share of the verdict.
Defendant, City, claims that the most reasonable interpretation of the indemnification clause of the lease is that they are required to indemnify the landlord only in circumstances in *1034 which the landlord has no responsibility for the accident. The City claims that: (1) where the landlord is responsible for some portion of the accident, the claim against the landlord is a claim for injuries resulting from landlord’s negligence and is not a claim for injuries "resulting from tenant’s negligence”, and is therefore not within the literal scope of the hold-harmless clause contained in paragraph 10 of the lease; (2) the interpretation is consistent with General Obligations Law § 5-321 "which permits tenants to agree to indemnify landlords only to the extent that the accident was caused by factors other than the landlords own negligence.”
In order for a court to construe a contract as requiring a party to indemnify another party for the indemnitee’s own negligence, the court must find that it was the " 'unmistakable intent of the parties’ ” to remove from the indemnitee all responsibility for its own negligent conduct. (Hogeland v Sibley, Lindsay & Curr Co., supra, at 159; Levine v Shell Oil Co., 28 NY2d 205, 212 [1971]; Kurek v Port Chester Hous. Auth., 18 NY2d 450, 456 [1966].) It suffices that the agreement between the" parties connotes an "intention to indemnify [which] can be clearly implied from the language and purposes of the entire agreement”. (Margolin v New York Life Ins. Co., 32 NY2d 149, 153 [1973].) Absent such an "unmistakable intent,” each defendant remains responsible for its own negligence.
The indemnification language in question, that the tenant is "to save the landlord harmless against all claims for all injuries” is founded upon contractual indemnification. It is simple, clear and direct. The landlord is to be held harmless against all claims for all injuries, resulting from tenant’s negligence in connection with its occupancy of the premises. The jury found that the City was negligent. That the jury also found Arenia to be 20% negligent does not in any way alter or reduce the City’s contractual obligation to hold the landlord harmless against all claims for all injuries resulting from the negligence of either defendant. The issue was dealt with in the case of Weinstock v Jenkins Contr. Co. (131 Misc 2d 369 [1986], affd 134 AD2d 254 [2d Dept 1987]). In that case, Jenkins entered into a construction contract with the City, which contained an indemnification clause that provided that if the City sustained loss, damage, or injury resulting from the negligence of the contractor " 'the Contractor shall indemnify and hold the City harmless from any and all claims and judgments for damages * * * which the City may be subjected *1035 to or which it may suffer or incur by reason thereof.’ ” (Supra, at 370.) The jury returned a verdict finding Jenkins 15% negligent, the City 55% negligent and the other defendants and plaintiff 30% negligent. Jenkins contended that, under the General Obligations Law, it was entitled to a setoff for the 55% share of negligence attributed to the City and that the indemnification agreement between Jenkins and the City did not change the results. The Appellate Division, Second Department, held that once Jenkin’s negligence was established, complete indemnity of the City was triggered by the contractual provisions.
In the within litigation, even though substantial responsibility for plaintiff’s injury was found by the jury on the part of the indemnitee, such finding does not impinge nor otherwise override the contractual obligation to which the parties bound themselves. The City’s obligation as tenant, pursuant to a lease and resolution of the Board of Estimate, "to save the landlord harmless against all claims for all injuries resulting from tenant’s negligence in connection with its occupancy of these premises” requires the City to assume its obligation for payment of 100% of the judgment rendered in favor of the plaintiff Rosemary Taylor.
The court finds that the defendant City of New York has a valid and enforceable contractual obligation to indemnify the building owner, Arenia and Ernestine Institute, Inc., et al., and to hold them harmless from any and all liability for all and for any part of the judgment rendered in favor of plaintiff, Rosemary Taylor.
The motion of the defendant, Arenia and Ernestine Institute, Inc. for indemnification from the City of New York is granted.