**AMUSEMENT INDUSTRY, INC. dba Westland Industries; and Practical Finance Co., Inc., Plaintiffs,**

v.

**Moses STERN, aka Mark Stern; Joshua Safrin; First Republic Group Realty LLC; Ephraim Frenkel; and Land Title Associates Escrow, Defendants.**

**No. 07 Civ. 11586(LAK).**

United States District Court, S.D. New York.

March 1, 2010.

Allen Phillip Sragow, Sragow & Sragow, Long Beach, CA, Eugene R. Scheiman, Mark Alan Bloom, Arent Fox LLP, New York, NY, for Plaintiffs.

Stephen R. Stern, Mark W. Geisler, Philip S. Ross, Hoffinger Stern & Ross LLP, Michael C. Rakower, David Emanuel Miller, Law Office of Michael C. Rakower, New York, NY, Nathan D. Adler, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for Defendants.

### ORDER

LEWIS A. KAPLAN, District Judge.

The motion of Avery Egert to dismiss the third-party complaint against him [DI 308] is granted, substantially for the rea-

sons stated in Judge Gorenstein's report and recommendation [DI 355] to which no objection has been filed. Third-party plaintiff Stern is granted leave to replead provided the amended third-party complaint is filed no later than March 15, 2010.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

Third-party plaintiffs Moses Stern and First Republic Group Realty LLC ("First Republic") filed a third-party complaint asserting claims for contribution and indemnification against third-party defendants Allen Alevy, Allen Sragow, Robert Friedman, and Avery Egert. *See* Third Party Complaint of Mark Stern and First Republic Group Realty LLC against Allen Alevy, Allen P. Sragow, Robert Friedman and Avery Egert, filed June 9, 2009 (Docket # 294) ("3d-Party Compl."). Egert has now moved to dismiss the third-party complaint as against him.[1] For the reasons stated below, the motion to dismiss should be granted with leave given to Stern to replead his claims.[2]

### I. *FACTS*

This case began when plaintiffs Amusement Industry, Inc. and Practical Finance

---

1. *See* Notice of Motion to Dismiss Third Party Complaint of Mark Stern and First Republic Group Realty, LLC against Avery Egert, filed July, 14, 2009 (Docket # 308); Memorandum of Law in Support of Motion to Dismiss Third Party Complaint of Mark Stern and First Republic Group Realty, LLC against Avery Egert, filed July 14, 2009 (Docket # 309) ("Def. Mem."); Memorandum of Law in Opposition to Motion of Third Party Defendant Avery Egert to Dismiss Third Party Complaint of Mark Stern, filed Aug. 3, 2009 (Docket # 315) ("Pl. Opp. Mem."); Reply Memorandum of Law in Support of Motion to Dismiss Third Party Complaint of Mark Stern and First Republic Group Realty, LLC against

Avery Egert, filed Aug. 17, 2009 (Docket # 322) ("Def. Reply").

2. Although Egert moves to dismiss the third-party complaint filed by both Stern and First Republic, the Court will not include First Republic in its adjudication of this motion. On June 25, 2009, the Court was notified that First Republic filed a Chapter 11 bankruptcy petition, which results in an automatic stay of a judicial action against First Republic. *See* 11 U.S.C. § 362(a)(1). The Court has assumed that claims brought *by* First Republic against other parties are also stayed, and no party has objected to such a stay.

Co., Inc. (collectively, "Amusement") sued a number of defendants, including Stern, First Republic, and Egert, asserting that they were responsible for the plaintiffs' $13 million loss in a real estate transaction. *See* Corrected First Amended Complaint, filed May 12, 2009 (Docket # 285) ("Compl.").

Stern and First Republic then filed their third-party complaint seeking indemnification and contribution from Egert in the event that Stern and First Republic are found liable to Amusement for any amount.3d-Party Compl. ¶ 75. The third-party complaint alleges the following facts, which we presume to be true on this motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

The transaction giving rise to the underlying events of this lawsuit involved the acquisition of a group of shopping centers from Colonial Realty Limited Partnership (the "Portfolio").3d-Party Compl. ¶ 13. In April 2007, First Republic, owned by Moses Stern, entered into a written contract to purchase the Portfolio. *Id.* ¶¶ 3, 13. In May 2007, Stern and First Republic authorized Steven Alevy and his firm, Bankers Capital Realty Advisors ("Bankers Capital") to secure the financing needed for the closing. *Id.* ¶¶ 18–21. Unbeknownst to Stern, Steven Alevy along with Robert Friedman, the Managing Director of Bankers Capital, *see* 3d-Party Compl. ¶ 8, secretly plotted to sabotage First Republic's acquisition of the Portfolio so that they could acquire it for themselves; for Allen Alevy, the principal of Amusement and Steven Alevy's father; and for Alan Sragow, an Alevy family attorney and Allen Alevy's son-in-law, *id.* ¶¶ 6, 9, 25–26. To accomplish this scheme, Steven Alevy and Robert Friedman persuaded potential financing sources not to loan funds to First Republic. *Id.* ¶ 27.

With the help of a different broker, First Republic was able to obtain financing for the Portfolio from Citigroup, which provided senior and mezzanine financing in the amount of approximately $131 million. *Id.* ¶¶ 41, 43. First Republic was still left with a shortfall in money needed for the closing, however, and eventually authorized Steven Alevy to be its exclusive broker to obtain it. *Id.* ¶ 30. While First Republic initially attempted to obtain this financing from the seller, *id.* ¶ 41, Steven Alevy persuaded it to enter into an agreement whereby the Alevy family would finance the remainder of the Portfolio, *id.* ¶¶ 42, 45. Allen Alevy and Allen Sragow then wired $13 million for the deal to Land Title Associates ("LTA"), escrow agent for the Portfolio, pursuant to a letter of understanding. *Id.* ¶¶ 46, 48.

On July 12, 2007, Steven Alevy gave oral instructions to LTA to release the $13 million. *Id.* ¶ 55. LTA released the funds to First Republic and the funds were used to close the acquisition of the Portfolio. *Id.* On July 13, Allen Alevy and Allen Sragow, without knowing that the funds had been released the previous day, made certain additional demands of First Republic and did not agree to the release of the funds unless those demands were met. *Id.* ¶ 56. On July 16, 2007, Sragow emailed LTA and Stern's lawyer and stated that because these demands were not met, he and Allen Alevy would not authorize the release of the $13 million. *Id.* ¶ 57. As noted, however, the funds had already been used to close the transaction. *Id.*

The allegations regarding Egert are disjointed and much thinner than those involving the other parties. In June 2007, Stern was introduced to Egert, president of The Sovereign Group ("TSG"), *id.* ¶ 38, which is owned by Joshua Safrin, *id.* ¶ 10. Egert had apparent and actual authority to act for Safrin. *Id.* ¶¶ 10, 38, 72–74. In

a meeting with Stern, Egert pledged to provide $5 million in equity and to co-sponsor the transaction on behalf of Safrin "in exchange for a minority interest in the entity that would own the [Portfolio]." *Id.* ¶ 38; *accord id.* ¶¶ 10, 73. Egert provided Safrin's signature in connection with the Citigroup loan and Portfolio transaction documents, and represented that he had authority to enter into the transaction on Safrin's behalf. *Id.* ¶ 74. However, Safrin asserts that his signatures on loan and guaranty documents were forged and that he did not at any point authorize his participation in the Portfolio. *Id.* ¶¶ 38, 70. Unbeknownst to Stern, both Safrin and Egert had worked with Bankers Capital on other transactions. *Id.* ¶ 38. The third-party complaint also alleges that Safrin and Egert hold a minority interest in First Republic through ownership of an entity called JSAE Colonial LLC. *Id.* ¶ 10.

Stern alleges in his third-party complaint that if "Egert's representations to [First Republic] were false and Stern and First Republic are found to be liable to the plaintiffs in this action, Egert is liable to Stern for contribution and/or indemnification for fraudulently misrepresenting he was authorized to enter into the transaction on behalf of Safrin." 3d-Party Compl. ¶ 75; *accord id.* ¶ 138.

## II. *LAW GOVERNING MOTIONS TO DISMISS*

A party may move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) where the opposing party's complaint "fail[s] to state a claim upon which relief can be granted." While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation, internal quotation marks, and brackets omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft,* 129 S.Ct. at 1949, and thus a court's first task is to disregard any conclusory statements in a complaint, *id.* at 1950.

Next, a court must determine if the complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face." *Id.* at 1949 (citation and internal quotation marks omitted); *accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 129 S.Ct. at 1949 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed.R.Civ.P. 8(a) because it has merely "alleged" but not "show[n] ... that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a) (2)).

█ If the allegations of a complaint show that the complained of conduct was "not only compatible with, but indeed was more likely explained by, lawful" conduct, no claim for relief is stated. *Id.* at 1950; *see also id.* at 1951 (allegations in a com-

plaint are rejected where there is an "obvious alternative explanation" for the conduct alleged that is more "likely").

## III. *DISCUSSION*

While the claims in this case arise under state law, no party has briefed the issue of choice of law. Because the parties relied on New York State law in their memoranda of law, however, they have implicitly consented to having New York law apply. *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir.2000) (citing *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989)).

We now discuss the claims raised in Egert's motion.

### A. *Contribution*

■ Stern asserts that "in the event that the [Amusement] plaintiffs . . . obtain a judgment against Stern and First Republic and Egert is found not to have been authorized to enter into, on behalf of Safrin, the Citigroup loans or any other agreements executed in connection with First Republic's acquisition or financing of the Properties," it is entitled to seek contribution from Egert. *See* 3d-Party Compl. ¶ 136.

■ Contribution is a remedy available "to [a]ny tortfeasor who pays more than its fair share of a judgment—as apportioned by the factfinder in terms of relative culpability" against other joint tortfeasors. *See Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 556, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992) (citing N.Y. C.P.L.R. §§ 1401–02). The crucial element in allowing a claim for contribution to proceed is that "the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Raquet v. Braun,* 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (citing *Nassau*

*Roofing & Sheet Metal Co. v. Facilities Dev. Corp.,* 71 N.Y.2d 599, 603, 528 N.Y.S.2d 516, 523 N.E.2d 803 (1988)) (internal quotation marks omitted); *accord Rosner v. Paley,* 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 (1985). The duty may be one owed not merely to the party that was allegedly injured (here, Amusement) but also to another party, such as the party seeking contribution (here, Stern). *Sommer,* 79 N.Y.2d at 559, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ("a concurrent wrongdoer . . . should be held responsible for the portion of the damage attributable to his negligence, despite the fact that the duty violated was not one owing directly to the injured person"); *accord Raquet,* 90 N.Y.2d at 182, 659 N.Y.S.2d 237, 681 N.E.2d 404.

The problem with Stern's complaint is that it is devoid of factual allegations regarding what tortious conduct attributable to Egert harmed Amusement. Stern alleges only that Egert is liable to Stern "for fraudulently misrepresenting that he was authorized to enter into the transactions on behalf of Safrin." 3d-Party Compl. ¶ 138, *accord id.* ¶ 75. But nothing in the third-party complaint explains how this purported misrepresentation contributed to any injury to Amusement. *See Raquet,* 90 N.Y.2d at 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 ("the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.") (citing *Nassau Roofing & Sheet Metal Co.,* 71 N.Y.2d at 603, 528 N.Y.S.2d 516, 523 N.E.2d 803) (internal quotation marks omitted).

To the extent Stern seeks to have the Court examine the allegations of the underlying complaint to fill in the gaps in his pleading, *see* Pl. Opp. Mem. at 9–10, we do not believe it is appropriate to do so. Stern was free to plead hypothetical facts or alternative facts to support his claim of

contribution. *See, e.g.,* Fed.R.Civ.P. 8(d)(2)-(3) (permitting pleading "hypothetically" and the assertion of "Inconsistent Claims or Defenses"); *Padre Shipping, Inc. v. Yong He Shipping,* 553 F.Supp.2d 328, 333 (S.D.N.Y.2008) ("plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another") (citation omitted). But, without such pleading, it cannot be known which facts or claims contained in the underlying complaint he relies on for purposes of making his claims against Egert.

In sum, Stern has failed to state a claim for contribution against Egert and thus this claim should be dismissed. However, the dismissal should give Stern leave to replead the third-party complaint as it is possible that the defects in the pleading may be cured through repleading additional facts. *See, e.g., Hayden v. County of Nassau,* 180 F.3d 42, 53 (2d Cir.1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").

#### B. *Indemnification*

■ Stern asserts that "[i]n the event that Egert's representations to Third Party Plaintiffs were false and Stern and First Republic are found to be liable to the plaintiffs in this action, Egert is liable to Stern for ... indemnification for fraudulently misrepresenting he was authorized to enter into the transactions on behalf of Safrin." 3d-Party Compl. ¶ 75. Stern does not assert in his brief that he has a right to express contractual indemnification against Egert. Accordingly, we construe his claim as seeking implied indemnification.

■ "Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Mas v. Two Bridges Assocs. by Nat'l Kinney Corp.,* 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990) (citing *McDermott v. City of N.Y.,* 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)); *accord Hernandez v. GPSDC (N.Y.) Inc.,* 2008 WL 220636, at *7 (S.D.N.Y. Jan. 28, 2008). It is grounded in the "principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled ... to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.'" *Raquet,* 90 N.Y.2d at 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (quoting *Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola,* 134 N.Y. 461, 468, 31 N.E. 987 (1892)). Thus, indemnity may be implied "to prevent a result which is regarded as unjust or unsatisfactory" and "is frequently employed in favor of one who is vicariously liable for the tort of another." *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) (citations and internal quotation marks omitted). While vicarious liability is a common example of a situation that calls for implied indemnification, indemnity is also available in cases where liability is based on strict product liability and breach of warranty. *See, e.g., McDermott,* 50 N.Y.2d at 218–19, 428 N.Y.S.2d 643, 406 N.E.2d 460; *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 242 (2d Cir.2002) ("A state-law claim for indemnity may rest upon (*inter alia*) breach of a quasi-contractual relationship or warranty."). In general terms, indemnity allows a defendant to recover for a loss occasioned solely "by imputation of law," *Mas,* 75 N.Y.2d at 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257, that it would otherwise be forced to bear on its own.

■ Stern provides no allegations that explain *why* he is entitled to indemnity from Egert. He merely states conclu-

sorily that Egert should be responsible for any claims by Amusement because Egert fraudulently represented himself as acting on behalf of Safrin. 3d-Party Compl. ¶¶ 75, 138. But "the one seeking indemnity must prove ... that the proposed indemnitor was guilty of some negligence that contributed to the causation" of the underlying injury. *Perri v. Gilbert Johnson Enters., Ltd.*, 14 A.D.3d 681, 684–85, 790 N.Y.S.2d 25 (2d Dep't 2005); *accord George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 929–30, 878 N.Y.S.2d 143 (2d Dep't 2009) (proposed indemnitee "was required to show that ... proposed indemnitors ... were responsible for the negligence that contributed to the accident") (citations and internal quotation marks omitted). In other words, to obtain indemnity, the conduct of the proposed indemnitor must have *caused* the loss for which the proposed indemnitee has been found liable. *See George*, 61 A.D.3d at 930, 878 N.Y.S.2d 143 (to obtain indemnity, defendant was required to show that plaintiff's injuries were "attributable" to the third-party defendant). As noted during our discussion of contribution, Stern has provided no factual allegations suggesting that Egert caused the injuries to Amusement for which Stern may be held liable.[3] Accordingly, for this reason alone, indemnity is not available to Stern.

■■■■ Indemnity is not available here for a second reason. Under New York law, indemnification is not available where the party seeking indemnification was "partially at fault" or "responsible in any degree" in situations where the parties violated the same duty to the plaintiff. *Monaghan v. SZS 33 Assoc., L.P.*, 73 F.3d 1276, 1284–85 (2d Cir.1996) (citation omitted); *accord George*, 61 A.D.3d at 929–30, 878 N.Y.S.2d 143 (proposed indemnitee must show that it was free from fault);

*Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453, 492 N.Y.S.2d 371 (1st Dep't 1985) ("Since the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine."). Stern does not explain how he could both be found liable to Amusement and also at the same time be found free from fault.

The Court notes that there is some confusion in the case law on this aspect of the indemnity doctrine because New York at one time permitted indemnification claims where there was some fault on the part of the proposed indemnitee "in response to the potentially harsh results of the inflexible rules barring contribution among joint tort-feasors." *See generally D'Ambrosio v. City of N.Y.*, 55 N.Y.2d 454, 461, 450 N.Y.S.2d 149, 435 N.E.2d 366 (1982). Thus, the Second Circuit once held that indemnity was available in situations where "there is a great disparity in the fault of two tortfeasors." *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir.1986) (citations omitted). Indeed, following the *Yemen* case, many federal courts, including this one, have continued to cite to its "great disparity" language. *See, e.g., Highland Capital Mgmt., L.P. v. Schneider*, 533 F.Supp.2d 345, 353 (S.D.N.Y.2008); *Cevasco v. Nat'l R.R. Passenger Corp.*, 2007 WL 4440922, at *6 (S.D.N.Y. Dec. 18, 2007); *Wainwright v. Matrix Asset Advisors, Inc.*, 2006 WL 531241, at *2 (S.D.N.Y. March 6, 2006).

■■■ But, contrary to the broad statement in the *Yemen* case, indemnity is no longer available under New York law

---

**3.** Again, we reject Stern's efforts, *see* Pl. Opp. Mem. at 6–7, to have us look to the underlying complaint to make this connection when

there is not even any reference in the third-party complaint to allegations in the underlying complaint.

where the proposed indemnitee bears fault for the injury for which it seeks indemnity. Where a party seeking to recover against other tortfeasors is at fault, New York instead relegates such a party to the remedy of contribution. *See Johnson City Cent. School Dist. v. Fidelity & Deposit Co. of Md.,* 272 A.D.2d 818, 822, 709 N.Y.S.2d 225 (3d Dep't 2000) ("where [joint] tortfeasors share in responsibility for the same injury ... apportionment through contribution, rather than a shifting of the entire loss through implied indemnification, is generally the appropriate remedy"). And, indeed, the Second Circuit has itself recognized that "common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff," *Monaghan,* 73 F.3d at 1284–85 (citing cases)-although *Monaghan* did not refer to the *Yemen* case in so holding.

Here, while Stern asserts he was "duped" by Egert and did nothing wrong, Pl. Opp. Mem. at 7, the third-party complaint does not provide a scenario under which Stern could be found both free from fault and at the same time liable for damages to Amusement because of Egert. In other words, Stern has not explained how he could be found vicariously liable—or liable in any other way imputed by law—because of his relationship with Egert. Accordingly, Stern has not stated a claim for indemnity against Egert. While it is not clear that repleading will cure this defect, there is no harm in giving Stern the opportunity to do so in light of the fact that he is being given an opportunity to replead his contribution claim.

## IV.  *CONCLUSION*

For the foregoing reasons, Egert's motion to dismiss the third-party complaint as against him (Docket # 308) should be granted. The dismissal should give Stern leave to replead.

## *PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated:  March 12, 2010.

New York, New York.