*tingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010).

AMUSEMENT INDUSTRY, INC. dba Westland Industries; and Practical Finance Co., Inc., Plaintiffs,

v.

Moses STERN, aka Mark Stern; Joshua Safrin; Avery Egert; First Republic Group Realty LLC; Ephraim Frenkel; First Republic Group Corp.; and Land Title Associates Escrow, Defendants.

No. 07 Civ. 11586 (LAK)(GWG).

United States District Court, S.D. New York.

March 15, 2011.

James J. Maloney, Kavanagh, Maloney & Osnato LLP, New York, NY, for third party defendant Buchanan Ingersoll & Rooney, PC.

Justin Y.K. Chu, McCarter & English, LLP, for third party defendant Stephen Friedman.

Thomas M. Wood, IV, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for defendant and third–party plaintiff Joshua Safrin.

Michael C. Rakower, David E. Miller, Law Office of Michael Rakower, PC, New York, NY, for defendant Avery Egert.

Stephen R. Stern, Mark W. Geisler, Hoffinger Stern & Ross, LLP, New York, NY, for defendants Mark Stern, First Republic Group Corp., Ephraim Frenkel, and Land Title Associates Escrow.

Allen P. Sragow, Sragow & Sragow, Long Beach, CA, for Plaintiffs Amusement Industry, Inc., and Practical Finance Co., Inc. and third party plaintiff Steven Alevy dba Bankers Capital Realty Advisors.

## ORDER

LEWIS A. KAPLAN, District Judge.

This matter again is before the Court, this time on the motions of Friedman and Buchanan Ingersoll Rooney, P.C. ("BIR") to dismiss the implied indemnification cross-claims against them filed by Bankers Capital Reality Advisors LLC and its principal, Steven Alevy (collectively "Bankers Capital").

In a careful report and recommendation dated February 23, 2001, Magistrate Judge Gabriel W. Gorenstein recommended that these motions be granted. No objections have been filed.

In the circumstances, the motions of Friedman and BIR to dismiss the implied indemnification cross-claims against them by Bankers Capital [DI 513, 515], that is to say, count V of Bankers Capital's cross claim, are granted.

SO ORDERED.

## REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

In a third-party complaint, defendant Joshua Safrin asserts claims against, *inter alia,* third-party defendants Bankers Capital Realty Advisors LLC and its principal, Steven Alevy (whom we will refer to collectively as "Bankers Capital"), and against Buchanan Ingersoll & Rooney, P.C. and one of its attorneys, Stephen Friedman (whom we will refer to collectively as "BIR"). *See* Joshua Safrin's Third Amended Third Party Complaint and Demand for Jury Trial, filed May 7, 2010 (Docket # 423) ("Safrin TPC"). In its answer, Bankers Capital includes a cross-claim for indemnification against BIR. *See* Third Party Defendants Bankers Capital Reality Advisors LLC's and Steven Alevy's Fourth Amended Answer to the Third Amended Third Party Complaint of Defendant Safrin, Counterclaims Against Safrin, and Cross Claims Against Stern, Egert, First Republic, Frenkel, Land Title, Stephen Friedman and Buchanan Ingersoll & Rooney, filed Sept. 2, 2010 (Docket # 497) ("BC Claims") at 35–40 ¶¶ 29–46. BIR has now moved to dismiss Bankers Capital's cross-claim against it.[1]

1. *See* Notice of Motion by Third–Party Defendant Buchanan Ingersoll & Rooney PC to Dismiss Bankers Capital and Steven Alevy's Fifth Cross–Claim, filed Oct. 5, 2010 (Docket # 513); Third–Party Defendant Buchanan Ingersoll & Rooney PC's Memorandum of Law in Support of Its Motion to Dismiss Count V of Bankers Capital and Steven Alevy's Cross–Claim for Indemnification, filed Oct. 5, 2010 (Docket # 514); Memorandum of Law in Opposition to Motion to Dismiss Cross Claim for Indemnification by Third Party Defendants Buchanan Ingersoll & Stephen Friedman, filed Oct. 12, 2010 (Docket # 519) ("BC Opp. Mem."); Third–Party Defendant Buchanan Ingersoll & Rooney PC's Reply Memorandum of Law in Further Support of Its Motion to Dismiss Count V of Bankers Capital and Steven Alevy's Cross–Claim for Indemnification, filed Oct. 28, 2010 (Docket # 524).

Friedman has joined BIR's motion. *See* Notice of Motion by Stephen Friedman to Dismiss Bankers Capital and Steven Alevy's Fifth Cross–Claim, filed Oct. 5, 2010 (Docket # 515).

For the reasons stated below, the motion to dismiss should be granted.

## I. BACKGROUND

### A. The Main and Third–Party Complaints

#### 1. Factual Allegations Against Bankers Capital and BIR

This case began when plaintiffs Amusement Industry, Inc. and Practical Finance Co., Inc. (collectively, "Amusement") sued a number of defendants, including Safrin, asserting that they were responsible for the plaintiffs' $13 million loss in a real estate transaction. Amusement brought claims against Safrin for an equitable lien, a constructive trust, a purchase money resulting trust, declaratory relief, fraud, negligent misrepresentation, conversion, conspiracy to commit fraud and/or conversion, and unjust enrichment. See Third Amended Complaint, filed Apr. 27, 2010 (Docket # 405) ¶¶ 57–104, 128–37.[2] Included in Amusement's third amended complaint are allegations that Stephen Friedman held himself out as Safrin's attorney, id. ¶ 25; that Friedman represented to Amusement that Safrin was participating in the deal, id. ¶ 23; that Friedman supplied documents for the deal with Safrin's signature on them, id. ¶ 27; that Steven Alevy asserted that Safrin told him he was participating in the deal, id. ¶ 24; and that Safrin actually participated in the deal, id. ¶ 2.

In Safrin's third amended third-party complaint against Bankers Capital and BIR, Safrin alleges that Amusement's claims against him are based on misrepresentations made to Amusement by Bankers Capital and BIR, among others, about Safrin's participation in the Colonial Transaction, see Safrin TPC ¶ 6. Safrin alleges that these misrepresentations were made "with the intent to induce Amusement to provide financing in connection with the Colonial Transaction," id. ¶ 6, and that he "was unaware of the existence" of this transaction, id. ¶ 8.

Safrin asserts that he did not hire BIR or Friedman to represent him and that he did not communicate or suggest to them that they were to act as his agents or to bind him on matters relating to his real estate investments generally, or the Colonial Transaction specifically. Id. ¶¶ 33, 59. He alleges that the Citigroup financing was obtained in part based on representations made to the company that Safrin was an investor in this transaction. Id. ¶¶ 38–40. Safrin asserts, however, that he never represented to anyone that he would invest in the transaction. Id. ¶ 41. Safrin also claims that he did not authorize anyone to form the entity known as "JSAE Colonial LLC," id. ¶ 44—apparently an entity that Safrin supposedly owned and that was to be part of the transaction, see id. ¶¶ 42–44, 46, 80. Nor did he authorize Friedman to represent that Friedman would be responsible for obtaining Safrin's signature on any documents for use in the closing of the transaction, see id. ¶ 51. Safrin further alleges that he "never had a conversation with Steven Alevy regarding the Colonial Transaction," that he did not retain "Steven Alevy or Bankers Capital to act as his agent or broker with respect to the Colonial Transaction," and that he "did not authorize [them] … to make any representations on his behalf to Amusement." Id. ¶ 59.

Safrin alleges that he never signed any documents relating to the Colonial Transaction, id. ¶ 118, including the JSAE Colo-

---

**2.** Some of these claims were dismissed in a prior opinion: Amusement Indus., Inc. v. Stern, 693 F.Supp.2d 327 (S.D.N.Y.2010).

nial Operating Agreement, *id.* ¶¶ 82, 118(a), and that Bankers Capital "intentionally participated with [BIR] . . . in furtherance of the plan to defraud Safrin by, among other things, facilitating the use of the forged JSAE Assignment." *Id.* ¶ 146. He asserts that both BIR and Bankers Capital were aware that his signatures on relevant documents were forgeries, *see id.* ¶¶ 84, 98, 105, 146, and that they "took no action to notify Safrin of the forgery or to notify the others involved in the Colonial Transaction that Safrin's signature was a forgery," *id.* ¶ 85; *see id.* ¶¶ 86, 146–47.

### 2. *Causes of Action Against Bankers Capital and BIR*

Safrin makes claims against both Bankers Capital and BIR for conspiracy to commit fraud/forgery, *id.* ¶¶ 143–49 (second claim), conspiracy to violate N.Y. Civil Rights Law § 51, *id.* ¶¶ 150–57 (third claim), implied indemnification, *id.* ¶¶ 173–78 (sixth claim), and contribution, *id.* ¶¶ 179–82 (seventh claim). Safrin also makes claims against BIR alone for fraud/forgery, *id.* ¶¶ 134–42 (first claim), breach of duty as agent/attorney, *id.* ¶¶ 158–65 (fourth claim), and negligence, *id.* ¶¶ 166–72 (fifth claim).[3]

### B. *Bankers Capital's Answer, Counterclaims, and Cross–Claims*

### 1. *Factual Allegations Relating to BIR*

Bankers Capital alleges the following facts in its answer, counterclaims, and cross-claims, which we presume to be true on this motion to dismiss. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

"In approximately May 2007, Bankers Capital was asked to arrange financing" on behalf of Safrin, Mark Stern, Avery Egert, and First Republic Group Realty LLC "for the purchase of a large portfolio of properties from Colonial Realty Limited Partnership" ("Colonial" or "the transaction"). BC Claims at 32 ¶ 3. In June 2007, Bankers Capital arranged for Amusement to provide $13 million in financing for the transaction. *Id.* at 32 ¶ 4. Neither Bankers Capital nor Amusement would have been involved in the transaction were it not for Friedman and BIR's efforts initiating their involvement. *Id.* at 36 ¶ 32. Steven Alevy and Friedman had a "longstanding relationship," *id.*, and Friedman was Alevy's "personal attorney[,] . . . best friend, rabbi, personal confident, and legal advisor," *id.* at 36 ¶ 33. This close relationship between Alevy and Friedman extended to Friedman's firm, BIR. *Id.*

Bankers Capital further alleges that the claims made by Safrin against it in Safrin's third-party complaint "could actually arise out of Friedman's and/or [BIR's] actions, rather than" those of Bankers Capital and Steven Alevy. *Id.* at 37 ¶ 35. To support this contention, Bankers Capital references a number of paragraphs in Safrin's third-party complaint, including Safrin's allegations that the forged documents were sent only to Stern and Friedman, that Friedman knew Safrin was not involved in the transaction, that Friedman or Stern forged Safrin's signature, that Safrin did not know about the transaction, and that Safrin did not ratify any actions taken by BIR. *See* BC Opp. Mem. at 5 (citing Safrin TPC ¶¶ 43–46, 57, 59, 79–86, 96–98, 118–23, 131, 133).[4]

---

**3.** Some of the claims brought by Safrin against BIR were recommended for dismissal in *Amusement Indus., Inc. v. Stern,* 786 F.Supp.2d 741, 2011 WL 867339 (S.D.N.Y. 2011).

**4.** As suggested by Bankers Capital, *see* BC Opp. Mem. at 4, 11 n. 3, we will deem the references in paragraph 35 of Bankers Capital's cross-claims to have been revised to match the paragraph numbers in Safrin's latest version of his third-party complaint.

Bankers Capital asserts that it "did not participate in the preparation, transmittal or execution" of the loan documents and guaranties used in connection with the transaction or the Assignment of LLC Membership Interests, and that it did not forge Safrin's signature on these documents. BC Claims at 39 ¶¶ 37, 39. Amusement received these documents not from Bankers Capital but from Friedman and BIR. *See id.* at 39–40 ¶¶ 38, 40.

### 2. Bankers Capital's Cross–Claims Against BIR

Bankers Capital makes cross-claims against BIR for implied indemnification, *id.* at 35–40 ¶¶ 29–46 (fifth cross-claim), and contribution, *id.* at 41 ¶¶ 47–50 (sixth cross-claim). In this motion, BIR seeks dismissal only of the cross-claim for implied indemnification, not the claim for contribution. Bankers Capital's cross-claim for implied indemnification alleges that if Safrin sustained any damages, then "such damages were brought about solely as a result of the primary, intentional and active recklessness, carelessness, negligence, wrongdoing, misrepresentation, fraud and/or breach of contract by" BIR, among others, *id.* at 35 ¶ 31.

## II. LAW GOVERNING MOTIONS TO DISMISS

■■■ A party may move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) where the opposing party's complaint "fail[s] to state a claim upon which relief can be granted ...." While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007) ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citations, internal quotation marks, and brackets omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal,* 129 S.Ct. at 1949, and thus a court's first task is to disregard any conclusory statements in a complaint, *id.* at 1949–50.

■■■ Next, a court must determine if the complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face." *Id.* at 1949 (citation and internal quotation marks omitted); *accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed.R.Civ.P. 8(a) because it has merely "alleged" but not " 'show[n] ... that the

---

Thus, the paragraph citations above are to the latest version of Safrin's latest third-party complaint, as set forth in Bankers Capital's brief, *id.* at 5, rather than to the citations contained in paragraph 35 of its cross-claims.

pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

■ A court typically examines only the allegations of a pleading on a motion to dismiss but "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citation omitted).

## III. *DISCUSSION*

■ While the claim in this case arises under state law, no party has briefed the issue of choice of law. Because all parties have relied on New York State law in their memoranda of law, they have implicitly consented to the application of New York law. This "'implied consent ... is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir.2000) (quoting *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989)) (omission in original).

### 1. *Legal Standard*

■ "Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Mas v. Two Bridges Assocs. by Nat'l Kinney Corp.,* 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990) (citing *McDermott v. City of New York,* 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)) (additional citations omitted); *accord Hernandez v. GPSDC (N.Y.) Inc.,* 2008 WL 220636, at *7 (S.D.N.Y. Jan. 28, 2008). It is grounded in the "principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled ... to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.'" *Raquet v. Braun,* 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (quoting *Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola,* 134 N.Y. 461, 468, 31 N.E. 987 (1892)) (additional citation omitted) (omission in original). Thus, indemnity may be implied "to prevent a result which is regarded as unjust or unsatisfactory" and "is frequently employed in favor of one who is vicariously liable for the tort of another." *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) (citations and internal quotation marks omitted). In general terms, indemnity allows a defendant to recover for a loss occasioned solely "by imputation of law," *Mas,* 75 N.Y.2d at 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257, that it would otherwise be forced to bear on its own. *See, e.g., Amusement Indus., Inc. v. Stern,* 693 F.Supp.2d 301, 307–09 (S.D.N.Y.2010).

### 2. *Discussion*

■ Much of Bankers Capital's briefing turns on its argument that it may recover from BIR even if it has been shown to be at fault for the conduct for which it is held liable. Thus, Bankers Capital argues that it should be able to recover from BIR in the event that it is faced with a judgment against it for conduct "primarily" caused by BIR. BC Opp. Mem. at 8. In a related argument, it contends that because it is being sued by Safrin on conspiracy counts, and because conspiracy is occasionally referred to in case law as "secondary liability," it has an indemnity claim against BIR. BC Opp. Mem. at 8–9. Apparently, the syllogism is that if Bankers Capital is secondarily liable, then BIR must be "primarily" liable and a secondarily liable party necessarily has an implied indemnity claim against the party who is "primarily" liable.

■ This argument fails, however, most obviously because New York law no longer allows the doctrine of implied indemnity to be used by a tortfeasor who has been found to be at fault. The evolution of law on this point was explained in a prior opinion in this case and bears repeating here:

> Under New York law, indemnification is not available where the party seeking indemnification was "partially at fault" or "responsible in any degree" in situations where the parties violated the same duty to the plaintiff. *Monaghan v. SZS 33 Assoc., L.P.*, 73 F.3d 1276, 1284–85 (2d Cir.1996) (citation omitted); *accord George [v. Marshalls of MA, Inc.]*, 61 A.D.3d [925,] 929–30, 878 N.Y.S.2d 143 [ (2d Dep't 2009) ] (proposed indemnitee must show that it was free from fault); *Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453, 492 N.Y.S.2d 371 (1st Dep't 1985) ("Since the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine."). . . .

The Court notes that there is some confusion in the case law on this aspect of the indemnity doctrine because New York at one time permitted indemnification claims where there was some fault on the part of the proposed indemnitee "in response to the potentially harsh results of the inflexible rules barring contribution among joint tort-feasors." *See generally D'Ambrosio v. City of N.Y.*, 55 N.Y.2d 454, 461, 450 N.Y.S.2d 149, 435 N.E.2d 366 (1982). Thus, the Second Circuit once held that indemnity was available in situations where "there is a great disparity in the fault of two tortfeasors." *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir.1986) (citations omitted). Indeed, following the *Yemen* case, many federal courts, including this one, have continued to cite to its "great disparity" language. *See, e.g., Highland Capital Mgmt., L.P. v. Schneider*, 533 F.Supp.2d 345, 353 (S.D.N.Y.2008); *Cevasco v. Nat'l R.R. Passenger Corp.*, 2007 WL 4440922, at *6 (S.D.N.Y. Dec. 18, 2007); *Wainwright v. Matrix Asset Advisors, Inc.*, 2006 WL 531241, at *2 (S.D.N.Y. March 6, 2006).

But, contrary to the broad statement in the *Yemen* case, indemnity is no longer available under New York law where the proposed indemnitee bears fault for the injury for which it seeks indemnity. Where a party seeking to recover against other tortfeasors is at fault, New York instead relegates such a party to the remedy of contribution. *See Johnson City Cent. School Dist. v. Fidelity & Deposit Co. of Md.*, 272 A.D.2d 818, 822, 709 N.Y.S.2d 225 (3d Dep't 2000) ("where [joint] tortfeasors share in responsibility for the same injury . . . apportionment through contribution, rather than a shifting of the entire loss through implied indemnification, is generally the appropriate remedy"). And, indeed, the Second Circuit has itself recognized that "common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff," *Monaghan*, 73 F.3d at 1284–85 (citing cases)—although *Monaghan* did not refer to the *Yemen* case in so holding.

*Amusement Indus., Inc. v. Stern*, 693 F.Supp.2d 319, 326–27 (S.D.N.Y.2010).

Here, Bankers Capital alleges that it "denies any wrongdoing or fault," BC Claims at 35 ¶ 30, and argues that "if it is found liable to Safrin, such liability was caused solely by BIR (or others)," BC

Opp. Mem. at 10. But its cross-claims do not provide a scenario under which Bankers Capital could be found both free from fault and at the same time liable for damages to Safrin because of the conduct of BIR. Both BIR and Bankers Capital are being sued for conspiracy to commit fraud/forgery and to improperly use Safrin's name under N.Y. Civil Rights Law § 51. Bankers Capital offers no scenario, let alone allegations in its pleadings, under which it will be liable simply based on BIR's conduct and not because it committed its own tortious or unlawful conduct.

Bankers Capital argues that it had a "special relationship" with Friedman and BIR because Friedman was Alevy's attorney and that this supports a claim of implied indemnification. *See* BC Opp. Mem. at 11. It points to a prior decision of the Court, *see id.* at 8, in which a principal was allowed to make an implied indemnification against an agent. *See Amusement Indus., Inc.,* 693 F.Supp.2d at 309 (allowing Safrin to make an implied indemnification claim against BIR on the ground that BIR might be found to be cloaked with apparent authority to act as Safrin's agent).[5] But there are no allegations in Safrin's complaint that he is seeking to hold Bankers Capital vicariously liable as principal because of BIR's actions as Bankers Capital's agent or attorney. In other words, Safrin could not use the relationship between BIR and Bankers Capital to hold Bankers Capital liable for BIR's own tortious or improper acts.

Nor does Bankers Capital's complaint suggest as much. The mere fact that two parties had an attorney/client (that is, agent/principal) relationship in *some* transaction does not mean that they necessarily held that relationship in every other transaction. There are simply no allegations in the pleading that Friedman was holding himself out as Bankers Capital's attorney. Accordingly, Bankers Capital has not alleged that it could be held liable to Safrin simply as a result of action taken by BIR on its behalf.

Finally, Bankers Capital argues that "in the event that [it] is held liable to Safrin and required to discharge that liability, then BIR would be unjustly enriched." BC Opp. Mem. at 12. In support of this argument, Bankers Capital cites to our previous decision in this case in which we held that in some instances a claim for implied indemnification need not arise from a "separate duty" owed by the indemnitor to the indemnitee. Rather, such a claim may arise in certain cases where two persons are liable in tort to a third person for the same harm but only one of them discharges the liability of both. *See id.* at 10 (citing *Amusement Indus., Inc. v. Stern,* Report and Recommendation, filed July 26, 2010 (Docket # 468) ("July 26,

---

5. As we noted there:

[I]f a principal commits acts that create an apparent agency relationship and the principal thereby becomes responsible to an outside party for the agent's acts, this does not necessarily mean that the principal is barred from obtaining indemnity. Even if the agent was imbued with *apparent* authority in a third person's eyes, the agent would necessarily know that it could not properly purport to bind the principal without *actual* authority. If the agent acted without actual authority, there is no reason that it should not be held responsible for the principal's liability. *See, e.g., Gleason v. Temple Hill Assocs.,* 159 A.D.2d 682, 683–84, 553 N.Y.S.2d 430 (2d Dep't 1990) (agent with apparent authority must indemnify principal with respect to agent's acts outside the scope of its actual authority). As between a principal who—perhaps unintentionally—creates apparent authority and an agent who acts knowing he has no actual authority, it is only fair that the principle of indemnity would permit the principal to recover from the improperly acting agent.

*Amusement Indus., Inc.,* 693 F.Supp.2d at 309.

2010 Report and Recommendation") at 12–13 (citing Restatement (Second) of Torts § 886B(1) (1979)), *adopted by* Order, filed Sept. 8, 2010 (Docket #502)). In that decision, however, we sustained the claim for indemnification because the pleading had reflected the possibility of a factual scenario under which the third-party defendant " 'was induced to act by a misrepresentation on the part of [fourth-party defendants], upon which [the third-party defendant] justifiably relied,' " July 26, 2010 Report and Recommendation at 13 (quoting Rest.2d Torts § 886B(2)(c)). Here, no such scenario or one remotely like it has been alleged.

## IV. *CONCLUSION*

For the foregoing reasons, Friedman and BIR's motions to dismiss (Docket ##513, 515) Bankers Capital's cross-claim for implied indemnification (count V) should be granted.

### *PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88

L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010).

Dated: February 24, 2011

New York, New York